STATE ex rel. DETIENNE, Appellant, v. CITY OF VANDALIA et al., Respondents.

**St. Louis Court of Appeals, May 8, 1906.**

1. **NUISANCES: Obstruction in Street.** The occupation of a portion of the main street by a structure containing farm scales and a corn sheller operated by steam and other machinery such that the travel on one side of the street was impeded, was a public nuisance and unlawful.

2. **MUNICIPAL CORPORATIONS: Streets: Licensing Nuisance.** A municipal corporation holds its streets in trust for the general public and cannot license a purely private occupancy of the streets of such a character that it interferes seriously with their main character as highways.

3. **NUISANCE: Action to Abate by Prosecuting Attorney.** The attorney-general of the State, or the prosecuting attorney of the county in which a public nuisance exists, may maintain an action to abate the nuisance independent of any statute; such action possesses the characteristics of a bill in equity.

4. ————: ————: **Statutory Authority.** Under section 6130, Revised Statutes 1899, the circuit court has jurisdiction of a proceeding instituted in the name of the attorney-general or prosecuting attorney to inquire into breaches of trust by a municipal corporation, and a purpresture in a street maintained by permission of the city is a nuisance which can be abated in that manner.

5. ————: **Public Nuisance: Abatement at Instance of Private Party.** The prosecuting attorney has no right to employ the State's name to redress a private wrong in which the public at large has no interest.

6. ———: ———: **Proceeding by Prosecuting Attorney.** Where a complaint to abate a nuisance, filed by the prosecuting attorney in the name of the State at the relation of an individual, averred that the relator suffered peculiar damages differing in degree and kind from that suffered by the public, but averred further that the damage to relator was incidental to the public nuisance and that the cause is prosecuted for the State of Missouri, that the structure complained of constituted a public nuisance, the presumption is that the prosecuting officer proceeded in the exercise of an official duty and that he was not merely using the State's name to serve the interests of the relator.

7. ———: ———: ———: **Use of Relator.** Such a proceeding is in the line of the duties of an attorney for the commonwealth and the suit may be conducted with or without a relator, who, if used, has no influence upon the progress of the case.

8. ———: **Municipal Corporations: Limitations: Purprestures.** Where a purpresture is maintained in a street by an individual, with the permission of the municipal corporation, the occupancy was not adverse to the right of the public for whose use the municipal corporation held the street.

9. ———: ———: ———: ———. Under section 4270, Revised Statutes 1899, an action in the name of the city to recover possession of such portion of the street would not be subject to the Statute of Limitations.

10. ———: ———: ———: ———: **Suit at Instance of State.** Where a purpresture was maintained in the street by permission of the city, the Statute of Limitations did not run against an action brought by the prosecuting attorney in the name of the State at the relation of a citizen, under the provision of section 4270, notwithstanding the provisions of section 4299, Revised Statutes 1899.

11. ———: **Statute of Limitations: Common Law.** At common law a public nuisance can not be legalized by prescription.

12. ———: **Limitations: Action by State.** Section 4299, Revised Statutes of 1899, does not apply to an action brought by a prosecuting attorney in the name of the State to the use of a citizen for the purpose of abating a nuisance.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*Jno. D. Orear* and *P. H. Cullen* for appellant.

(1) The State may maintain an action against a municipal corporation and the creators of a nuisance through its public law officer. 1 Encyl. of Law (2 Ed.), p. 72; 21 Encyl. of Law (2 Ed.), p. 705; 10 Encyl. of Pl. and Pr., p. 902; 14 Encyl. of Pl. and Pr., p. 1136; 29 Encyl. of Law (2 Ed.), p. 82. (2) The same rule obtains in Missouri. State ex rel. v. Saline Co., 51 Mo. 350; McDonald v. City of Newark, 7 Atl. 855; Belcher v. Grain Elevator, 82 Mo. 121; R. S. 1899, sec. 6130. (3) The streets of a city are held in trust by the city for the benefit of the public. R. S. 1899, sec. 8959; Glasgow v. St. Louis, 87 Mo. 678; Cummings v. St. Louis, 90 Mo. 263, 2 S. W. 130; Smith v. McDowell, 22 L. R. A. 393; R. S. 1879, sec. 6573; Genl. Stat. 1865, p. 248, sec. 8. (4) City has no authority to use the streets for any purpose other than the public purpose for which they were dedicated. State ex rel. v. St. Louis, 161 Mo. 382, 61 S. W. 658; Burnes v. St. Joe, 91 Mo. App. 494; Coal Co. v. Coal Co., 62 Mo. App. 96; Price v. Thompson, 48 Mo. 361. (5) Even when given exclusive control or vested with plenary power they cannot divert the uses to which the street is dedicated. Atlanta v. Warnock, 23 L. R. A. 304; 2 Dillon, secs. 909-912. (6) The petition clearly shows that defendants have taken possession of a great portion of the street, and the street being properly granted and sequestered for public use, the Statute of Limitations cannot be invoked to legalize the act of taking possession of said street adversely. The very language of our statutes show this beyond controversy. Section 4270, R. S. 1899, is as follows: "Nothing contained in any Statute of Limitations shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State." Under that statute, and under the rulings of all our courts construing that statute, the

lapse of time cannot legalize the wrongful acts of defendants in appropriating this property to their private use. Columbia v. Bright, 179 Mo. 441, 79 S. W. 151; Brown v. Carthage, 128 Mo. 10, 30 S. W. 312; Railway v. Smith, 170 Mo. 327, 70 S. W. 700; State v. Warner, 51 Mo. App. 174; Hendrickson v. Grable, 157 Mo. 42, 57 S. W. 784; Railway v. Totman, 149 Mo. 657, 51 S. W. 412. By virtue of this statute Judge MARSHALL, speaking for the Supreme Court, held that the State might maintain a suit for land, held for it in trust, after the lapse of thirty years. State ex rel. v. Crumb, 157 Mo. 547, 57 S. W. 1030. (7) The streets of a city are held in trust by the city for the benefit of the public. Hence the rule applies. 27 Encyl. of Law (2 Ed.), pp. 150-159; 20 Encyl. of Law (2 Ed.), p. 1188-1221. 2 Story on Equity Juris., sec. 921; 2 High on Inj., sec. 1303; 3 Pomeroy, Eq. Juris., secs. 1359, 1349. The case of Callaway Co. v. Nolley, 31 Mo. 393, was decided in 1861, under the Laws of 1835. (8) Section 4270 was passed in 1865. This section changed the rule announced in the Nolley case. The clear effect of the decisions cited above makes this certain. Our Supreme Court has in very pointed language so held. Mississippi Co. v. Vowels, 101 Mo. 228, 14 S. W. 282; Connecticut Mut. Life v. St. Louis, 98 Mo. 424, 11 S. W. 968. (9) When the object of the proceedings is to enforce a public duty, the people are regarded as the real party and the relators need not show that they had any special interest in the result. Jennings v. Railway, 59 Mo. App. 530. State ex rel. v. Francis, 95 Mo. 48, 8 S. W. 1; State ex rel. v. Railroad, 86 Mo. 13. (10) An information is exclusively the suit of the official agent and must be prosecuted by his sanction and be guided and controlled by his judgment. The Attorney-General or law officer has the entire control of the proceedings, and like every other party to a civil suit, the law officer may appear and act by his attorney and counsel. Atty.-Gen. v. Moliter, 26 Mich. 450; Parker v.

May, 5 Cush. (Mass.) 337; U. S. v. San Jacinto Tin Co., 125 U. S. 273; Atty.-Gen. v. Haberdasher Co., 15 Beav. 402; Atty.-Gen. v. Ironmonger's Co., 2 Beav. 328; Hesing v. Atty.-Gen., 104 Ill. 292; State v. Anderson, 29 La. Ann. 775. (11) A relator is not in any case indispensable to the prosecution of an information in equity. State v. Cunningham, 81 Wis. 489; People v. Stratton, 25 Cal. 242; People v. Ballard, 134 N. Y. 277; State v. Railroad, 36 Ohio St. 435; District Atty. v. Railroad, 16 Gray (Mass.) 242. (12) At common law no right can be required by a prescription to permit the continuance of public nuisance and such defense can not be set up in a proceeding on the part of the public. Cross v. Morristown, 18 N. J. Eq. 305; Tainter v. Morristown, 19 N. J. Eq. 46, Board of Health v. Lederer, 52 N. J. Eq. 675, 29 Atl. 444; Rex v. Cross, 3 Camb. 224; Gerring v. Barfield, 16 C. B. N. S. 597, 111 E. C. L. 597; State v. Phipps, 4 Ind. 515; Ashbrook v. Com., 1 Bush (Ky.) 139; 89 Am. Dec. 616; Railroad v. State, 20 Md. 157; Com. v. Upton, 6 Gray (Mass.) 475; People v. Cunningham, 1 Den. (N. Y.) 524, 43 Am. Dec. 709; State v. Hollman, 104 N. C. 861; Com. v. Yost, 11 Pa. Supr. Ct. 323. (13) A private nuisance may be prescribed, for notwithstanding the fact that it may be a public nuisance as well. But, as against the public no right by prescription can be gained to maintain a nuisance, yet it is held that against landowners whose lands are injured such prescriptive right may be acquired. Borden v. Vincent, 24 Hick. (Mass.) 301; Lawrence v. Fairhaven, 5 Gray (Mass.) 110; Perley v. Hilton, 55 N. H. 444; Mills v. Hall, 9 Wend. (N. Y.) 315, 24 Am. Dec. 160; Charnley v. Shawano Water Power, etc., Imp. Co., 109 Wis. 563; Perley v. Hilton, 55 N. H. 444.

*Geo. Robertson* for defendants.

(1) Appellant states in his petitions as follows: "Plaintiff further says that the obstructions herein com-

plained of have been maintained and continued in said H street for such period of time that any action by private persons who suffer special damage on account of these obstructions is barred by limitations and said private persons are remediless on account of any injury they suffer by reason of these obstructions, but plaintiff, the State of Missouri, says it does not recognize the plea of limitation as to its rights and therefore prays the court," etc. The relator, Detienne, therefore admits that his private remedy is barred by the Statute of Limitations. The limitation for private persons is ten years. Sections 4262, 4271 and 4372, R. S. 1899; Wood on Lim. (3 Ed.), sec. 182, and numerous authorities there cited; Mills v. Hall, 9 Wend. 315. What was originally a nuisance has by time been transferred into a right which in this State so becomes in ten years. Bunten v. Railway, 30 Mo. App. 414; McGowan v. Railroad, 23 Mo. App. 203; James v. City of Kansas, 83 Mo. 567. (2) It is provided in section 4299, Revised Statutes 1899, that "The limitations prescribed in this chapter shall apply to actions brought in the name of this State, or for its benefit in the same manner as to actions by private parties." The statute here cited applies to this action. County of St. Charles v. Powell, 22 Mo. 525; Callaway County v. Nolley, 31 Mo. 393; City of St. Louis to use v. Newman, 45 Mo. 138; Abernathy v. Dennis, 49 Mo. 468; School District v. Georges, 50 Mo. 195; Wickersham v. Woodbeck, 57 Mo. 59; Burch v. Winston, 57 Mo. 62; State to use v. Finn, 102 Mo. 222, 14 S. W. 984; O'Neil v. St. Louis, 8 Mo. 416. (3) It is well established that when exclusive control is granted by the Legislature to a municipality, the State will not be permitted to dispute the existence of such exclusive control. Where, by a city charter, sole and exclusive power to tax, license and regulate dramshops was given to such cities, the general provisions of the State statutes relating to dramshop-keepers does not apply. State v. Willard, 39 Mo.

App. 251; State v. Gordon, 60 Mo. 383. (4) The exclusive power to regulate and control the use of the streets is vested in the city. Its use is not restricted to that of transit alone, but it extends to the promotion of the public health and convenience. Indianapolis v. Consumers Gas Trust Co., 140 Ind. 107; Cummings v. City of Seymore, 79 Ind. 491. The Legislature has plenary power over the streets and highways of the State; it can suspend the enjoyment of them or devote them to any use it may see proper. This being true, it has the right in its plenary power over the municipal corporations of the State to vest this power in the cities, and having done so, the municipal corporation is not subject to official or judicial control by the State. Angell on Highways, sec. 216; Wood v. Mears, 12 Ind. 515; Wald v. Wallace, 12 Ind. 484; Wab. & E. C. Co. v. Spears, 16 Ind. 442; Macy v. Indianapolis, 17 Ind. 269; Vincennes v. Richards, 23 Ind. 382; Indianapolis v. Miller, 27 Ind. 397; Delphi v. Evans, 39 Ind. 93; Aurora v. Fox, 78 Ind. 4. (5) The city has the right to subject the streets to private uses under certain conditions and may authorize and render lawful obstructions and erections in the streets on the ground that such use may be a new and important use as demanded by the necessities of the times. St. Louis v. Bell Tel. Co., 96 Mo. 623, 10 S. W. 197; Hisey v. Mexico, 61 Mo. App. 248; Savage v. Salem, 23 Oreg. 381; Barrows v. Sycamore, 150 Ill. 588; Livingston v. Wolf, 136 Pa. St. 519; Cushing v. Boston, 28 Mass. 330; Chesapeake Tel. Co. v. McKenzie, 74 Md. 36.

STATEMENT.—The amended petition in this case was as follows:

"Be it remembered that J. D. Orear, prosecuting attorney for the said county, who in this behalf prosecutes for the State of Missouri, comes here into the said circuit court of Audrain county, Missouri, and for the State at the relation of A. L. Detienne, of Vandalia, in

said county, according to the form of law in such cases made and provided, and for his amended petition and information, gives the court here to understand and be informed that the defendant, the city of Vandalia, is a city of the fourth class, organized under the laws of the State of Missouri, located within Audrain county; that the defendants J. F. Coontz and E. C. Waters, are partners doing business under the name of Coontz & Waters, and are the owners of block 36 in Vandalia, Missouri, and that said lessors and lessees are in the possession of said property and exercise joint control over it. Plaintiff further states that H street is a regularly established street within the corporate limits of the said city of Vandalia and forms the eastern boundary of said block 36, and that the city of Vandalia as a city of the fourth class holds said street in a fiduciary capacity in trust for the uses and benefit of the public. Plaintiff says that the city of Vandalia and the other defendants named herein have erected in H street at a point immediately east of the mill property, a large high platform and shed and that said platform and shed are about sixty feet in length and about thirty-five feet in width and are erected wholly within said H street. That in said platform the defendants have placed large farm scales and a large corn sheller run by steam, and other machinery, and that said machinery and scales are not guarded by any barriers or railings. That said platform and shed are elevated there above the regular surface of the street to the height of about twenty feet and that said defendants have placed cinders and other material in said street for a long distance on either side of said platform and also upon the east of said platform and that said platform with its approaches occupies the greater half of said H street and completely obstructs all foot travel upon the west side of said street and forms an obstruction completely preventing travel upon the western half of said street and so occupies and obstructs the whole

of said street as to prevent the public from using the same as a street and highway, and plaintiff further says that said obstructions and said street are dangerous to public travel and constitute and are a public nuisance. Plaintiff further says that the defendants wrongfully and unlawfully operate machinery in said street emitting dust and making great noise and seriously interfering with the public in passing over and along said street. Plaintiff further states that if the obstructions are allowed to remain in said street persons traveling or attempting to travel over and along said street are liable to severe injury and damage, that collisions are liable to occur between travelers passing over and along said street and that said obstructions are calculated to frighten horses and cause them to run away and plaintiff, the State of Missouri, charges the fact to be that said obstructions in said public street constitute a public nuisance and are inimical to the public welfare.

"Plaintiff further says that the relator herein is an assessed taxpaying citizen residing in the city of Vandalia. That he is the owner of the west half of block 35 in the city of Vandalia, Missouri, which has a front of about 200 feet on H street and is immediately opposite the property herein described as the mill property and that on account of the public nuisance aforesaid, which is maintained in the street, the said relator suffers a special and peculiar damage differing in degree and kind from the general public, but plaintiff further says that the private damage of relator is incidental to and a result of the public nuisance which is maintained in said street and that the general public has suffered and will in the future continue to suffer great injury, damage and inconvenience. Plaintiff further states that the city of Vandalia has been notified of the obstructions herein complained of and requested to remove the same, but it has failed and refused to remove said obstructions and that the defendant herein, E. C. Waters, is the

mayor of said city and as such mayor, on account of the private benefit he received to his mill property, is personally interested in maintaining said obstructions in said street and that the city of Vandalia has refused to remove said obstructions and refuses to institute any suit to compel the other defendants to remove said obstructions, but on the contrary the mayor of said city has retained the city attorney as his private counsel to enable him to maintain said obstructions in said street forever.  And plaintiff says that if the State of Missouri is denied a standing in court to complain of the public nuisance herein mentioned, there is no remedy left either for the public or for any private individual by which they can effect the removal of said obstructions and cause the nuisance herein complained of to be abated. Plaintiff further says that the street known as H  street is held in trust by the city of Vandalia for the public and that said city has no right or authority under the law to use said street for any other purpose than for the purpose of public travel and plaintiff further says that the said city of Vandalia has exceeded its authority and committed a public wrong by placing said obstructions in said street and by suffering and allowing them to be placed therein and to remain therein.   Plaintiff further says that the obstructions herein complained of have been maintained and continued in said H street for such a period of time that any action by private persons who suffer special damage on account of these obstructions is barred by limitations and said private persons are remediless on account of any injury they suffer by reason of these obstructions, but plaintiff, the State of Missouri, says that it does not recognize the plea of limitation as to its rights and therefore plaintiff prays the court that an order of injunction issue out of this court, directed to the said defendants and each of them, enjoining and restraining them, their agents, servants and employees from maintaining said obstructions in

said streets, and a further mandatory order directing the defendants and each of them to remove said obstructions from the public street and to forever cease from doing or premitting any act or thing which shall interfere with the use of said street as a public street, or with the enjoyment of the same as such by the public at large, and for such other and further relief as to the court shall seem meet and just in the premises, and to make a further order that if said obstructions are not removed within a reasonable time, to be named in said decree, the sheriff of Audrain county shall execute this order by removing said obstructions and restoring said street to its proper condition and use for a street. And plaintiff prays for general relief."

To the foregoing petition a demurrer was sustained, and the State refusing to plead further, final judgment went against it, from which the present appeal is prosecuted.

GOODE, J. (after stating the facts).—That the occupation of a portion of a main street in the city of Vandalia by a private structure of the dimensions given in the information, is a public nuisance and unlawful, we have no doubt. The structure is alleged to be a platform and shed sixty feet long, thirty-five feet wide and twenty feet high, erected wholly within the street. On said platform defendants are alleged to have placed large farm scales, a corn-sheller operated by steam, and other machinery. This building is said to form an obstruction completely preventing travel on the western half of the street and to constitute a public nuisance. Besides the obstruction to travel, the machinery is alleged to cause dust and noise when operated, which annoy the public and are likely to frighten horses. Besides, it is alleged that people traveling on the west side of the street are liable to come into collision with the building defendants have erected thereon. A municipality holds its

streets in trust for the general public, to be used, principally, as thoroughfares. [Glasgow v. St. Louis, 87 Mo. 678.] Defendants urge that as cities of the fourth class are given control over streets by the Legislature, and as the petition or information states that the city of Vandalia authorized the purpresture in question and, indeed, has participated in its maintenance, it is lawful and cannot be regarded as a public nuisance. The control cities of that or any class have over their streets, is not so extensive that they may license individuals to take up a considerable portion of one with a private obstruction, thereby diverting the occupied part from use by the public as a place of locomotion; that is to say, the primary use to which it was dedicated. A city may permit certain kinds of private or semi-private structures to be put in a street, such as electric or cable railways, in order to facilitate the enjoyment of the street by the public as a highway; and some other private uses of the street, coal-holes, for instance, which but slightly, if at all, interfere with travel may be legalized by municipal license. But a city cannot license a purely private occupancy which seriously interferes with and detracts from the efficiency of the street in its main character of highway; and such an occupancy is none the less a nuisance when sanctioned by the city officials or governing body. [Glaessner v. Brewing Assn., 100 Mo. 508, 13 S. W. 707; Schopp v. St. Louis, 117 Mo. 131, 22 S. W. 898; Atlanta v. Warnock, 91 Ga. 210, 23 L. R. A. 301.] We recently discussed the power of an urban government to legalize private obstructions in streets and endeavored to define the limits within which this may be done. [Morie v. Transit Co., 116 Mo. App. 12, 91 S. W. 962.] No court ever has held that permission from the officials of a city to erect and maintain in a street impediments to travel of the size and kind alleged to be maintained by defendants, renders

the impediments lawful or hinders them from constituting a public nuisance. Such encroachments on either general or individual rights ought to be sternly repressed; for usually they are the outcome of aggressive selfishness and a disposition to ignore the rights of others. And when the particular individual who maintains and profits by a purpresture is the mayor of the municipality, and dominates, in a measure, its corporate action, there is special reason why a court should be cautious in denying relief invoked against the nuisance in behalf of the public. The Attorney-General of the State, or the prosecuting attorney of the county in which the nuisance exists, may proceed in equity in behalf of the sovereignty of the State, for its abatement. This is the rule independent of any statute touching the matter, as has been adjudged in many cases. [Smith v. McDowell, 148 Ill. 51, 22 L. R. A. 393; State v. Dayton, 36 Ohio St. 434; Hunt v. Railroad, 20 Ill. App. 282; People v. Beaudry, 91 Cal. 213, 220.] We apprehend that the right of those officials to interfere, grows out of the visitorial power of the State in respect of trusts of a public nature, and that the interference is akin to the suits in equity brought by attorney-generals for the regulation of public charities, which are frequently met with in the reports. [Atty.-Gen. v. Haberdasher Co., 15 Beav. 307; Parker, Atty. Commonwealth, v. May, 5 Cush. (Mass.) 336.] The usual mode of proceeding in seeking relief respecting either charities or purprestures and other nuisances, is by an information in equity; which pleading corresponds nearly to a bill in equity filed by a private suitor for his own benefit. The information is in behalf of the sovereignty of the State, to redress some grievance of which the State may complain in equity on its own account, or on account of persons or interests under its special protection; like idiots, lunatics and charities. And informations in equity are filed by the officer representing the sovereignty of the State;

that is to say, the Attorney-General, or, in this commonwealth, some prosecuting attorney. This sort of information possesses most of the characteristics of a bill in equity and differs from the latter in form rather than in function. [1 Ency. Pl. and Pr., pp. 857, 859; Story, Eq. Pl., sec. 8; People v. Stratton, 25 Cal. 242.] Some of the formal differences between the two are pointed out in the opinions in Atty.-Gen. v. Moliter, 26 Mich. 444, 449, and Atty.-Gen. v. Evart B. Co., 34 Mich. 462, 472. The right of the prosecuting attorney of Audrain county to maintain the present proceeding is made clear by both ancient and modern decisions of equity courts and is supported by a statute of this State, which provides that whenever any property, real or personal, is held by a municipal corporation in a fiduciary capacity, the circuit court shall have jurisdiction of a proceeding instituted in the name of the Attorney-General or prosecuting attorney to inquire into any breaches of trust, fraud or negligence and to administer proper relief. [R. S. 1899, sec. 6130.] An inquiry into breaches of trust and fraud would naturally be conducted by a court of equity and according to equity pleading and practice. A purpresture in a highway is a grievance of sufficient importance to justify its abatement at the instance of the State. [Atty.-Gen. v. Evart B. Co., 34 Mich. 473; State v. Dayton; Hunt v. Railroad, People v. Beaudry, supra.]

The information before us is said to show on its face that the State is but a nominal party and not acting for the common weal, but at the instance and for the benefit of Detienne, the relator, who is the sole party in interest. It is important to dispose of this point before proceeding further, for two reasons: The prosecuting attorney has no right to employ the State's name to redress a private wrong in which the public at large has no interest. [Atty.-Gen. v. Evart B. Co., 34 Mich. loc. cit. 475; Parker, Atty. Commonwealth, v. May; Atty.-Gen.

v. Moliter, supra] ; and whether or not the proceeding should be held barred by one of the limitation statutes, perhaps might depend on whether the suit is only nominally for the public and really for the relator. If the maxim that no time runs against the State, or, to put the proposition in apter form, if the rule that the right to maintain a public nuisance cannot be acquired by time, is applicable to this case, it is only so in the contingency that the State is the real party in interest; that is to say, is acting for the public. We suppose this is true of any legal rule limiting a remedy available to individuals, but from which, because of its prerogatives, the sovereignty may enjoy exemption. The exemption exists in favor of the sovereignty and when the State as such is interested in the proceeding; not when its name is used for the benefit of a private relator. Opinions treating this subject and disposing of it along the line of doctrine suggested, may be read in these cases: Moody v. Fleming, 4 Ga. 115; Miller v. State, 38 Ga. 600; United States v. Railroad, 118 U. S. 125; Id. v. Beebe, 127 U. S. 121; Bank of United States v. McKenzie, 2 Brock (U. S.) 393, 401. The information contains averments which fix the attention of one accustomed to suits in equity by private persons for the abatement of a public nuisance, on the ground that the suing party is specially damaged. It is pointed out that Detienne's property is immediately opposite the purpresture and that he suffers peculiar damage from its proximity, differing in degree and kind from that suffered by the public. It is further averred that Detienne's right, as well as the right of any other person, to sue for the abatement of the structure, has been lost by limitation. Those averments inclined us at first to the view that the proceeding was really a private one, instituted for Detienne's benefit; but on further consideration we are of the opinion that this conclusion was erroneous. It is alleged that the peculiar damage to plaintiff is inci-

dental to the public nuisance, and that the general public suffers, and will suffer, damage and inconvenience from the structure maintained by defendants. Moreover, the information avers that the cause is prosecuted for the State of Missouri at the relation of Detienne. That the structure constitutes a public nuisance would be the legal pronouncement on the facts averred. Hence, the presumption is that the prosecuting attorney proceeded in the exercise of an official duty when he instituted the suit and sought to abate the nuisance for the common good; instead of merely lending the State's name to subserve the peculiar interest of the relator. The proceeding is not only in the line of the general duties of an attorney for the commonwealth, but is in line with the duty which impliedly is laid on him by statute to institute an inquiry into any breach of trust by the city of Vandalia, or other city, in dealing with property held by it for the public, whenever he learns of the breach. Cases of this character are not infrequent in the reports, and the informations are usually at the relation of some citizen or taxpayer. Naming a relator is a circumstance devoid of influence on the course of the litigation, which is subject, entirely, to the control of the prosecuting officer; though if the suit was instituted without cause, the costs may be taxed against the relator. [State ex rel. Morris v. Railroad, 86 Mo. 13; State ex rel. v. Francis, 95 Mo. 44, 8 S. W. 1; State ex rel. Noonan v. Railroad, 59 Mo. App. 524, 530; State by Att'y-Gen. ex rel. v. Railroad, 36 Ohio St. 434, 440; Hesing v. Atty.-Gen., 104 Ill. 292; State ex rel. v. Cunningham, 81 Wis. 440, 488; People v. Stratton, 25 Cal. 242; People v. Ballard, 134 N. Y. 269; Att'y-Gen. v. Cockermouth, L. R. 18 Eq. 172, 179; Hunt v. Railroad, 20 Ill. App. 282; People v. Beaudry, 91 Cal. 213; Smith v. McDowell, 148 Ill. 51.] A relator is not indispensable, but the suit may be instituted and conducted without one; and, further, if one is named, no action of his

can affect the progress of the case, not even if he compromises the matter so far as his own interests are concerned. In some instances when a relator is named, a private bill in his behalf accompanies the information, and this bill may be retained or dismissed according to his interest. In Att'y-Gen. v. Cockermouth, the information by the Attorney-General was accompanied by a bill in equity in behalf of certain relators, the purpose being to abate a public nuisance; and though the injunctive relief prayed in the information was granted because the conduct of the defendants was opposed to a statute, the bill of the relator was dismissed because it did not appear that what defendants did had caused a nuisance or affected the relators. So, where an information filed by the Attorney-General at the relation of a private suitor was dismissed by the Attorney-General, it was ruled that the relator had no right to move to set aside the dismissal, because a relator cannot take any step in such a proceeding independently of the Attorney-General. [Hesing v. Att'y-Gen., 104 Ill. supra.] In another case it was said that the Attorney-General was the only party recognized by the court. [Atty.-Gen. v. Wright, 3 Beav. 447.] In view of the general principles laid down in the authorities on the subject, and the averments in the information showing that a public interest is to be protected by the suit, we hold that the statements regarding the special damage to Detienne should be regarded as immaterial; that no relator was necessary, and if one was to be used, Detienne would have served as well in his capacity of citizen of the town as in that of a person specially aggrieved by the purpresture.

The point of doubt on the demurrer relates to the Statute of Limitations. The petition alleges that the obstruction in the street has been maintained so long that an action by any private person specially damaged, is barred by limitation and all private persons are with-

out redress. This unqualified averment precludes inquiry into whether the occupancy has been continuous, or equally annoying and mischievous all the time; or other facts material to the acquisition by prescription of the right to maintain a nuisance as against private individuals. We must accept the averment that all individual right of complaint has been lost and inquire if the State's right is yet intact. In considering the limitation defense, it is to be noticed that the petition states no facts which would make good the defense of limitation, in any event, against an action by the city to recover the ground occupied by the individual defendants. According to the averments, the use of the street by those defendants is not adverse to the public, but permissive; that is to say, they have constructed the platform, scales, and other buildings in the street, by permission of the city of Vandalia, which represents the public in controlling the street. Indeed, it is averred that the city itself is a party to the matter; and, of course, the city could not acquire by time, a right to maintain a structure in the street, adverse to the enjoyment of the street by the public. The whole tenor of the information and the fair conclusion from the facts stated is, that the individual defendants, through the influence of one of them as mayor of the city, prevent the city from taking steps against the nuisance; which remains in the street by tolerance, instead of under a claim of right adverse to the right of the city to reclaim for public use, the ground occupied by it. Moreover, a statute provides that nothing contained in any limitation statute shall extend to any lands, given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to the State. [R. S. 1899, sec. 4270.] Since the enactment of this last statute, it has been held that an action in the name of a city to recover possession of part of a public street which had been appropriated by an individual, is subject to no limitation.

[Columbia v. Bright, 179 Mo. 441, 79 S. W. 151; Brown v. Carthage, 128 Mo. 10, 30 S. W. 312; State ex rel. v. Crumb, 157 Mo. 547, 57 S. W. 1030.]. Hence, it `appears both from the facts stated in the information and from thee statutory law, that if this were a case by the city of Vandalia to oust the other defendants from possession of the property occupied by their buildings, the limitation plea would be futile against the city's right of action.   But it is an entirely different case; one brought by the State.   Against the right of the State to maintain it, the statute is invoked which declares that the limitations prescribed in the chapter on that title "shall apply to actions brought in the name of this State or for its benefit, in the same manner as to actions by private parties."   [R. S. 1899, sec. 4299.] All the limitation statutes are *in pari materia* and to be construed with reference to each other.   If we grant that, generally speaking, a public nuisance may be legalized by an uninterrupted existence for ten years, as a private one may be, the question occurs whether a nuisance of the particular kind we are concerned with, that is, a purpresture, can be, on a proper construction of the two limitation statutes we have cited.   Most public nuisances would have no relation to the right of a municipality to possess its streets or other ground dedicated to the community, and the statute providing that the limitation laws shall not extend to lands granted to public use, would have no application to a case brought to abate the nuisance.   But a purpresture in a street bears directly on the right of the municipality to its lands; for the essence of the nuisance is the illegal private appropriation of ground dedicated originally to the public.   The present proceeding was instituted on the theory that the city is a party to the private appropriation of the street; in other words, has committed a breach of its trust by surrendering to private and unlawful uses, property which it was under an obligation

to hold for the general use. The prosecuting attorney was charged with the duty of instituting a proceeding to inquire into this breach of trust. The long appropriation of the street has been due, according to the averments of the information, to municipal delinquency, owing to the fact that the city government is under the influence of an official who profits by the breach. Now, inasmuch as the city would not be barred if it sought to have the obstruction removed, and as the prosecuting attorney, under the conditions averred, is suing to recover for the public that which belongs to it, the case, in effect, is one to obtain possession of ground dedicated to public use. In this view of the matter, the proper statute to apply is section 4270, which provides that the limitation acts shall not affect lands granted for public use, and has been construed to embrace lands held by cities for street purposes. The natural meaning of the language used is, that no action, the purpose of which is to obtain for the public, lands granted to it, shall be barred as private actions are. Why should the State bar its suit to protect a right which it has declared shall have no bar? We think it is immaterial that the suit is by the State instead of the city, when the State has the right to sue and the object to be achieved is the same that would be sought in an action by the city. For this reason, and also because of the rule that the right to maintain a purpresture in a highway cannot be acquired by limitation, we hold the present proceeding is not barred. It may be further stated in this connection that the State never is barred by an act of limitation unless the statute expressly provides that it shall be, and all doubts on the subject must be resolved in favor of the State. [19 Am. and Eng. Ency. Law (2 Ed.), pp. 188, 189.]

What we have been saying proceeds on the theory that, by virtue of the statute making the limitation acts apply to the State, public nuisances generally may be

legalized by adverse user. But we think the law is otherwise, notwithstanding said statute. At common law a public nuisance cannot be legalized by prescription. No matter how long it continues, it is subject to abatement on the complaint of the authorities. This doctrine has been applied often to instances of purpresture—encroachments on highways and public grounds. One reason given for it is that such encroachments are insidious, and as no one is charged with the particular duty of watching for them, they may exist for a long period without being observed or opposed; and, therefore, if the right to maintain them could be acquired by prescription, the public would lose to individuals, portions of its domain dedicated to general use. [Cross v. Morristown, 18 N. J. Eq. 305; Tainter v. Id., 19 N. J. Eq. 46, 59; Board of Health v. Lederer, 57 N. J. Eq. 675; State v. Phipps, 4 Ind. 515; Phila. R. R. v. State, 20 Md. 157; Gerring v. Batfield, 16 C. B. n. s. 597; Mills v. Hall, 9 Wend. 316.] This rule has prevailed in cases of criminal prosecutions for purprestures in highways against a defense based on an asserted prescriptive right. [Commonwealth v. Upton, 6 Gray 475; People v. Cunningham, 1 Denio 524.] The cases on the subject indicate that the rule is one phase of the maxim that no time runs against the King, or, in this country, against Federal or State sovereignty. It was alluded to as in force in Missouri by the Supreme Court in Smith v. Sedalia, 152 Mo. 283, 53 S. W. 907, wherein it was said that a public nuisance could not be prescribed for. The remark appears to have been unessential to the decision, nor did the court take notice of the Missouri statute which makes the limitation acts effective, generally speaking, against the State. [R. S. 1899, sec. 4299.] We think that statute does not include actions of this kind, but was intended to cover those in which the State sues to maintain some right belonging to it in its corporate entity, or those instituted in the name

of the State for the benefit of private individuals; such as suits on official bonds, or mandamus proceedings to enforce individual rights. Judges have emphasized the danger of the people being deprived, by unnoticed encroachments, of lands dedicated to their use; and we are impressed with the belief that the Legislature never intended by the statute in question, to preclude the State from suing to abate a purpresture after it had been maintained for ten years; thereby exposing the public to the risk of losing its easement to encroachers.

The result of the foregoing considerations is that the demurrer to the amended petition should have been overruled; therefore the judgment is reversed and the cause remanded. All concur.