LOUIS MILLER, BY CORA HANCE, AS HIS NEXT FRIEND, AND CORA HANCE IN HER OWN RIGHT AND AS THE MOTHER OF LOUIS MILLER, PLAINTIFFS-RESPOND-ENTS, v. PENNSYLVANIA-READING SEASHORE LINES, INCORPORATED, A CORPORATION, DEFENDANT-APPELLANT.

Argued February 2, 1938—Decided April 29, 1938.

For the appellant, *Bourgeois & Coulomb.*

For the respondents, *Samuel Moore* and *Burton A. Gaskill.*

The opinion of the court was delivered by

HETFIELD, J.  This is an appeal by the defendant from a judgment based upon a general verdict against it in an action to recover damages for personal injuries sustained by the infant plaintiff, and for consequential damages to his mother, as the result of the infant coming in contact with an electrified third rail maintained and controlled by the defendant.  The plaintiff, an eight-year-old boy at the time of the accident, September 6th, 1933, while crossing the defendant's tracks at a point where they intersect the Turnpike road of Pleasantville and Atlantic Turnpike, or Plank Road Company, tripped and fell against the rail.  There was a break in this rail where the Turnpike road is intersected by the tracks of the defendant, so that it would not interfere

with persons having occasion to cross the tracks while traveling on the Turnpike road.

This is the second appeal involving this case, the previous one being from a judgment entered upon a directed verdict in favor of the defendant, which was reversed, and *venire de novo* awarded. *Miller* v. *Pennsylvania-Reading Seashore Lines, Inc.,* 117 *N. J. L.* 152.

The main question involved in the present case, is whether the plaintiff was actually on the turnpike crossing, or on the private right-of-way of the railroad company, when the accident occurred.

The record shows, without contradiction, that the Turnpike Company was incorporated by an act of the legislature (chapter 270, laws of 1864, page 429), whereby it was authorized to construct a turnpike or plank road, one hundred feet wide, from Pleasantville to Atlantic City. The act provided that the road should be at least thirty feet in width, and that at least sixteen feet thereof should be sufficiently bedded and faced with stone or other material to make a solid and even road at all seasons of the year. It was further provided, that the company should not construct the road until the owners of the land over which same should pass were paid all damages sustained, and a method was provided for assessing damages when the company and the owners were unable to agree upon the amount thereof.

The appellant presents two grounds of appeal upon which a reversal is sought, both relating to the charge of the trial court. The first is that the court erroneously instructed the jury as follows: "I mean the so-called right of way of the turnpike, one hundred feet in width, granted by the act of the legislature of 1864. Our Court of Errors and Appeals has held—and I shall undertake from memory substantially to quote what the court held—that the charter of this Turnpike Company gave to it an easement of one hundred feet in width for the benefit of the public and that its right of way extends the full width of one hundred feet, and not merely the part which is worked or actually traveled," and the second, that the court erred in refusing to charge the following

request of the appellant, viz.: "Plaintiffs have no right to recover if the infant plaintiff was on the railroad right of way and outside of the line of the improved portion of the turnpike right of way."

The appellant contends that the trial court erred in its instruction by following the ruling made by this court in the prior appeal, with respect to the width of the easement held by the Turnpike Company, for the reason that in the previous case there was no evidence that a line of posts had been erected on either side of the road, with a space between the two lines of thirty feet, utilized as a road, which was constructed with pine or cedar poles laid on the ground with a covering of dirt and gravel paving. It is argued that this additional testimony precluded the possibility of the right of way being one hundred feet in width, and limited it to thirty feet. We are unable to subscribe to this contention. This evidence only indicated that the Turnpike Company constructed a solid and even road, thirty feet in width, instead of sixteen feet, as required by its charter, and did not limit the easement to that width, as there was ample testimony to show that on either side of the thirty foot road bed was a three foot embankment to prevent the surface water from washing away the gravel, making a width of thirty-six feet of the said right of way used and worked as a public highway.

In view of the decision of this court in the previous appeal, and the proof submitted in the present case, we think the trial court was justified in instructing the jury, as a matter of law, that the charter of the Turnpike Company gave it an easement of one hundred feet in width, and that its right of way extended to such width and not merely the part thereof which was worked or actually traveled. This conclusion of law is amply supported by the record. In addition to the granting of the charter, there was evidence submitted which indicated that the turnpike as built at the Shore road, in Pleasantville, was one hundred feet in width, and that such width continued for a distance of approximately fifteen hundred feet. There was also admitted in evidence a deed with a map attached thereto, from Albert P. Lake et al., to the Turnpike Company,

dated August 19th, 1899, and recorded July 2d, 1900, in the county clerk's office of Cape May county, whereby nineteen different persons granted and sold all their right, title and interest in a strip of land one hundred feet in width, beginning at Beach Thoroughfare, and ending at the borough of Pleasantville, which strip of land constitutes the right of way in question. So far as the record discloses, no property owner has objected to the said right of way, and consequently, no proceedings were ever had to obtain compensation for the land appropriated, so it can be reasonably inferred that all the property owners acquiesced. It appears that the turnpike road had been in use since 1876, and was a toll road at the time of the accident now involved. The railroad was organized by the predecessor of the appellant in 1879. Under such proofs, and the fact that the turnpike has been operated for a period of over sixty years, it will be presumed that the Turnpike Company acquired and appropriated the one hundred foot right of way authorized by its charter, by carrying out and conforming to the terms and conditions contained therein, and paying such compensation for damages as may have been necessary, to the owners of the land affected. *Tainter* v. *Mayor of Morristown,* 19 *N. J. Eq.* 46. There was no evidence sufficient to overcome such presumption. On the contrary, there was additional proof to show that the right of way was one hundred feet in width at the railroad crossing where the accident in question is alleged to have occurred, consisting of a map filed in the office of the secretary of state of New Jersey on December 27th, 1879, by the predecessor of the appellant, indicating the location of the right of way of the railroad company, and showing that where its railroad intersected the turnpike, the width of same was one hundred feet. Therefore, it is apparent that the railroad company, at the time it acquired its right of way, recognized the fact that the Turnpike Company had appropriated and acquired a right of way one hundred feet in width at the crossing, which is an important factor, so far as this case is concerned.

The refusal of the trial court to charge the request contained in the second ground of appeal was proper, as such an

instruction would not only have contained inconsistent statements, but would be contrary to the law as construed by our courts. It is well established in this state, that when a turnpike or highway is laid out for a certain width—as in the present case one hundred feet—the entire space becomes devoted to public use for all purposes of a highway, and the right of the public to use such highway extends to the whole breadth thereof, and not merely to the part which is worked or actually traveled, and therefore, an obstruction within the limits of the highway, although it be upon the untraveled part thereof, is a proper subject of complaint by the public or persons specially injured. *Miller* v. *Pennsylvania-Reading Seashore Lines, supra; Opdycke* v. *Public Service Railway Co.,* 78 *N. J. L.* 576; *Humphries* v. *Mayor, &c.,* 48 *Id.* 588, and 15 *Am. & Eng. Encycl. L.* (*2d ed.*) 492.

There was evidence to show that the improved and traveled part of the turnpike, where it crossed the railroad, was only sixteen feet in width. However, the highway at that point had a breadth of one hundred feet, and if the plaintiff was within the boundaries of said highway at the time of the accident, even though on the unimproved part, he was within his rights, and not a trespasser. *Ruggiero* v. *Central Railroad Co.,* 112 *N. J. L.* 163.

The court properly left all controverted questions of fact for the determination of the jury; and while there was conflicting evidence as to the location of the boundary lines of the turnpike right of way and the exact point at which the plaintiff was injured, there was sufficient proof to support the jury's finding for the plaintiff.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14.

*For reversal*—None.