STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,

v.

Charles E. JOHNS and Mary A. Johns,
Appellants.

No. KCD 26301.

Missouri Court of Appeals,
Kansas City District.

March 4, 1974.

William Harrison Norton and Wilbur L.
Pollard, Kansas City, for appellants; Nor-
ton & Pollard, Kansas City, of counsel.

Robert L. Hyder and Thomas E. Cheat-
ham, Asst. Counsel, State Highway Com-
mission, Jefferson City, for respondent.

Before PRITCHARD, P. J., and
SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

This is a suit to enjoin an encroachment
of appellants' Dairy Queen building at
1509 East 9th Street in Trenton, Missouri,

upon the public street (Route 6) at that location. The issues are (Point I) whether the trial court erred in finding (1) that the encroachment obstructed and deprived the public of any rights to the street and public way, and (2) that the public does suffer, and will suffer in the future, injuries and inconvenience by reason of the encroachment; (Point II) whether the trial court erred in not concluding as a matter of law that the property owner owns the fee to the center of the roadway subject to the state's right-of-way easement, and that the property owner may use the premises for any purpose which is not inconsistent with the purpose of the easement.

According to Russell Waller, who surveyed and made a plat of appellants' property and the street, the Dairy Queen building extended a little over 7 feet onto the right-of-way of Route 6. The area of encroachment of the building was of more recent construction than the original building. The entire right-of-way was 80 feet in width, and between the front, south side of the building and the travelled portion of the street was a sidewalk, and a parkway between the curb and the sidewalk, this area being 8 or 10 feet wide. The street was more than 24 feet wide curb to curb and was constructed of concrete. Appellants' building did not interfere in any way with the travelled portion of Route 6, which had two lanes of travel in either direction. Mr. Waller did not know of any plans for widening the street by respondent. Appellants' property did not create any drainage problems that he knew of, and there were parking facilities behind and to the side of the building, with two driveways going around it.

Earl Ebbe was formerly employed by the City of Trenton in issuing building permits. The zone or area required a 15 foot setback of a building from the property line, and Mr. Ebbe originally turned down the permit, but an appeal was taken to the adjustment board which allowed a waiver of the 15-foot setback. After the permit

was issued Mr. Ebbe called Mr. Johns and told him he thought the street was wider than they had been talking about and that he thought he ought to get the property surveyed.

Appellants' building permit was issued March 13, 1969. On March 25, 1969, George Crooks, then a Traffic Studies Engineer for the Missouri State Highway Department, called upon Mr. Johns. At that time the addition to the Dairy Queen building was partially constructed with its concrete floor poured, and about 1 foot to 18 inches of brick laid. Mr. Crooks advised Mr. Johns that he was encroaching on the right-of-way, and requested him to cease construction and move it off the right-of-way. Mr. Crooks acknowledged that a building to the east of appellants was on the right-of-way, and that ordinarily, except for the travelled portion of the highway, the property owner will mow his lawn and maintain the sidewalks on the right-of-way.

Dale Boxley, a Permit Inspector with the Missouri State Highway Department, was with Mr. Crooks when he interviewed Mr. Johns, and also asked him to remove the building extension. Mr. Boxley was also with the Trenton Mayor when the latter advised Mr. Johns to remove the building from the right-of-way. There was a problem with a considerable amount of encroachments on the right-of-way of North Street, and others voluntarily removed encroachments when they were advised of them.

On October 7, 1964, the City of Trenton entered into a maintenance agreement with the State Highway Commission by which the latter agreed to maintain without expense to the City, among other highways, "State Route 6—From the west city limits easterly to U. S. Route 65 for a distance of 2.27 miles, the constructed width." The agreement recited: "The Commission shall have full use of the existing right-of-way to such streets for maintenance purposes, and the City agrees to retain such right-

of-way for Commission use." On May 1, 1891, Ninth Street, in its entire 80 feet width was dedicated for public use.

Additional evidence was elicited on appellants' behalf which they say supports their contentions. Mr. Johns had obtained a building permit for an addition to his building at a cost of about $3,000.00. During construction there were changes made in the property so that drainage would be to its rear into a storm drain instead of going into the street. About 40 cars could be parked in the off-street parking area around the building; customers did not park in the street; and there were no complaints from the police about traffic. Mr. Johns admitted that he had been asked to remove the encroachment.

Witnesses Shafer, Norris and Hunolt all testified that the encroachment of appellants' building did not interfere with the public's right to travel Ninth Street, and that it caused no drainage problem.

■ It does not otherwise appear here but that there was a dedication to public use of Ninth Street by the filing of the plat by the subdividers of the area in 1891. In that case under the provisions of § 445.-010 et seq. RSMo 1969 (§ 7309 et seq. RSMo 1889) what the City of Trenton received was an easement for public use, and not a fee simple absolute, Ginter v. City of Webster Groves, 349 S.W.2d 895, 899[3] (Mo.1961); Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 582[2, 3] (Mo. banc 1943), and under the latter case if ever there was an abandonment of the public use, the original grantors or their successors who hold the fee simple, and adjoin the street would take their proportionate interests free of the burden of public use. From that correct premise that they own the fee interest in the street, subject to its use by the public as an easement, appellants make their two-fold argument that there was no obstruction of the street and no injury to the public by reason of the encroachment, and that since the nature of

the grant is an easement only the property owners may make use of their premises in any way not inconsistent with the purpose of the easement. For the latter proposition there are general statements, having no bearing upon the *permanent* nature of the encroachment here, in 28 C.J.S. Easements §§ 72, 91, pp. 750, 770, cited by appellants. Other cases cited by appellants may be distinguished in that they do not relate to an encroachment or obstruction of a public way. United States v. 11.06 Acres of Land, 89 F.Supp. 852 (E.D.Mo.1950) dealt merely with the rights of adjoining property owners to a park area to compensation where it had been federally condemned, and there was no issue of encroachment on a public street. Reutner v. Vouga, 367 S.W.2d 34 (Mo.App.1963), in one issue involved the use of a roadway easement, which had been created for the mutual, not public, use of the original abutting owners, in the construction of a sewer beneath the western 10 feet of the 20 foot roadway, and again no encroachment was involved. State ex rel. Appel v. Hughes, 351 Mo. 488, 173 S.W.2d 45 (1943) was also not an encroachment case, but involved a walkway easement which in the original reservation inured to the benefit of both the grantor and the grantees, and not to the general public.

Contrary to the general statements in appellants' citation as to use of an easement not inconsistent with its purpose, there are in the same authority other general statements: "The public has the right to the exclusive use of highways for public purposes, and any unauthorized obstruction thereof, or encroachment thereon, is unlawful, and constitutes a nuisance." 40 C.J.S. Highways § 217, p. 212; and "One is not justified in obstructing a highway because he leaves sufficient room for passage of the public. An obstruction placed anywhere within the highway limits, although outside of the traveled part, may constitute a nuisance." 40 C.J.S. Highways § 218, p. 214. See also 39 Am.Jur.2d Highways, Streets, and Bridges, §§ 274, 284, pp. 660, 672.

■ ■ There are, in addition to the above general statements, cases which bear more directly on the issues of this case. Foremost and factually in point is City of Emporia v. Humphrey, 132 Kan. 682, 297 P. 712 (1931). That was a suit for mandatory injunction to compel defendant to move a portion of her building from Commercial Street. The street was 100 feet wide, and was paved through its center 40 feet wide. On each side of the pavement were sidewalks and parkings in the street. Defendant's building encroached about 3 feet onto the street. At page 714 the court said, "A permanent encroachment upon a public street for a private purpose is a purpresture, and is in law a nuisance." The court quoted Elliott on Roads and Streets (4th Ed.) § 828, p. 1076: " 'Public highways belong, from side to side and end to end, to the public,' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden not only to adjoining owners, but to all the taxpayers and the traveling public as well. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes.' " See the there cited case of State v. Kean, 69 N.H. 122, 45 A. 256 (1897), stating substantially the rule of Elliott, supra, and, "Any unauthorized erection over a high-

way is a purpresture," 297 P. at page 715 of the City of Emporia opinion. See also National Sign Co. v. Board of Com'rs of Douglas County, 126 Kan. 81, 266 P. 927, 928 (1928), where the same contention of appellants here "that the highway is only an easement; that the owner (the farmer) holds the fee of the land to the center of the highway with right to use it for all purposes not incompatible with its use as a highway, * * *" was ruled adversely to the plaintiff; and State ex rel. King v. Friar, 165 Okl. 145, 25 P.2d 620 (1933), where the construction of a filling station which would have encroached upon the highway right-of-way 5 feet was ordered enjoined.

In Simpson v. Adkins, 386 Ill. 64, 53 N.E.2d 979 (1944), the question was right of the owners of the fee of the land, constituting the highway, to authorize their lessee to enter upon the public highway and drill, maintain and operate oil wells, etc. There was a statute which declared it to be a public nuisance to obstruct or encroach upon any public highway. It was argued that the three wells actually drilled were not on the travelled portion of the street, but the court said that made no difference —there was no contention that the wells were not within the highway boundaries, and at page 984, "In Gerstley v. Globe Wernicke Co., 340 Ill. 270, 172 N.E. 829, this court said that the public is entitled to the uninterrupted, unimpeded and unobstructed use of every portion and part of public streets and alleys, and this includes every inch or foot of such street or alleys, citing (cases)." It was held that the contract which required one of the parties to maintain a nuisance or other obstruction on the public highway had no validity.

In People v. Henderson, 194 P.2d 91, 93[1–4] (Cal.App.1948), the court said, "It is a well-settled principle of common law, which has frequently been embodied in statutory form, that a structure maintained on a public roadway is unlawful," and the court enjoined the maintenance of a shed on the highway right-of-way although it

was 15 feet from its travelled portion. Other cases involve claims for personal injuries resulting from obstructions on public highways. In United Gas Pipe Line Co. v. Jones, 236 Miss. 471, 111 So.2d 240 (1959), defendant erected a concrete marker 3 or 3½ feet from the edge of the blacktop pavement, and the marker was struck by an automobile, injuring plaintiff. In affirming plaintiff's judgment, the court said that under a statute the gas company could build its lines and appliances on the public highway, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads. Plaintiff tripped and fell over a cut-off box in a grass plot between the sidewalk and curb in Indianapolis Water Co. v. Schoenemann, 107 Ind.App. 308, 20 N.E.2d 671 (1939). At loc. cit. 677[8], the court said, "It is a nuisance and unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel. This rule applies to the whole width of the highway, and not merely to a worn portion of it commonly used for passage. Privileges which, if usurped by a great number of persons or corporations, would change the road from a public easement to a mere special benefit or convenience to such usurpers, are not lawful for any of them." See also Miller v. Pennsylvania-Reading Seashore Lines, 120 N.J.Law 172, 198 A. 848 (1938); and Commonwealth v. King, 54 Mass. 115, 119 (1847).

■ Brown, et al. v. Town of Carrollton, 122 Mo.App. 276, 99 S.W. 37 (1907), held that under the facts awnings projecting over the street were not public nuisances per se, and were not abatable by the city. In Brown, at page 38, the court did note the law governing public nuisances, in accord with the foregoing authority and cases, "[E]very actual encroachment upon a highway, by the erection of a fence or building thereon, or any other permanent or habitable obstruction, may fairly be said to be a nuisance, even though it does not operate as an actual obstruction upon a public right. * * * The public is entitled to the full and free use of all the territory embraced within a highway, in its full length and *breath*.'" See also State ex rel. Detienne v. City of Vandalia, 119 Mo.App. 406, 94 S.W. 1009 (1906), where a platform and shed blocking half of the travelled portion of the street was held abatable, although licensed by the city. More closely in point with the facts of this case is City of Poplar Bluff v. Knox, 410 S.W.2d 100 (Mo.App.1966), the primary issue was the right of defendants to compensation for buildings they had erected upon dedicated Bartlett Street in an action wherein the City had prevailed in ejectment of defendants from the street. The judgment in ejectment was not contested, but the court did observe, loc. cit. 410 S. W.2d 103, "Land dedicated to a public use as a street cannot be diverted from that use and a city has no right to permanently obstruct a public highway with a building, and an ordinance undertaking to do so is ultra vires and void", and at page 104, "The city cannot permit the structures to remain in the street and could not possibly receive any benefits therefrom." From the dictum in these cases it appears that Missouri does and should accord with the principles which were said in the City of Emporia case, loc. cit. 297 P. 715, to be of universal application. Appellants' contentions are thus without merit. For later cases than City of Emporia, see State ex rel. Beck v. City of Hutchinson, 62 P.2d 865 (Kan.1936); City of Russell v. Russell County Building & Loan Assn., 118 P.2d 121 (Kan.1941); and Boise City v. Sinsel, 241 P.2d 173 (Idaho 1952).

The judgment is affirmed.

All concur.