Paul J. WHYTE, Ruth E. Whyte, Earl Arr and Leroy Arr, Respondents,

v.

Raould ALTENDERFER, Dourne Altenderfer, and William DeVaul, Appellants.

No. WD 32306.

Missouri Court of Appeals, Western District.

April 6, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 1, 1982.

Application to Transfer Denied July 12, 1982.

Oswald & Cottey, Thomas R. Oswald, Kirksville, and Miller, Humphreys & Seidel, R. Max Humphreys, Trenton, for appellants.

Cleaveland, Macoubrie, Lewis & Cox, Kenneth R. Lewis, Chillicothe, for respondents.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Paul Whyte and Ruth Whyte brought suit against Raould Altenderfer and Dourne Altenderfer[1] for actual and punitive damages resulting from the removal of a levee on the Whyte land and for an injunction to restrain the Altenderfers from further interfering with the Whyte levee. The Altenderfers filed a counterclaim seeking damages for the obstruction of a natural watercourse or drainway by the Whytes' construction of their levee and an injunction to restrain the Whytes from further obstructing such watercourse. The court, sitting without a jury, found the issues in favor of the Whytes and awarded them the sum of $100 actual damages, $3,000 in attorney fees and $25,000 in punitive damages. The court found in favor of the Whytes on the Altenderfer counterclaim.

On this appeal the Altenderfers contend that the Whyte levee obstructed a private way of necessity which the Altenderfers had the right to use over the Whyte land and, therefore, the removal of the levee was justified. Affirmed.

The real estate involved in this suit is the southeast quarter of Section 31, Township 60, Range 23, in Grundy County. The Altenderfers owned the northeast quarter of that quarter section and the Whytes owned the other three quarters. This results in the Whytes owning the northwest, southwest and southeast quarters which form an "L" around the 40-acre Altenderfer tract. In 1943 the circuit court of Grundy County, as result of a suit filed by the Altenderfers' predecessor in title, granted a way of necessity across the west 20 feet of the southeast quarter owned by Whyte's predecessor in title. The private way ran north and south to connect the Altenderfer tract to a public road which ran on the south side of the Whyte land.

An east-west ditch divides the Altenderfer tract approximately in half. This ditch continues onto the Whytes' northwest quarter and runs generally west and south. For a number of years access to the north half of the Altenderfer tract across the ditch was gained by going onto the Whyte tract and using a crossing which had been constructed there. After crossing the ditch, access was then gained to the north half of the Altenderfer tract.

---

1. Named with the Whytes as plaintiffs were Earl Arr and Leroy Arr who sharecropped the Whyte land. Named as a defendant with the Altenderfers was William B. DeVaul, an earth moving contractor. In its judgment the court held that DeVaul was entitled to indemnification from the Altenderfers on the judgment for damages.

In the spring of 1979, an Altenderfer employee entered onto the Whyte property to cross the ditch after the Whyte crops had emerged. Apparently angered by the damage to their crops, the Whytes closed the crossing. The Altenderfers' response was to construct a crossing of the ditch on their property near the boundary with the Whyte land. There was evidence that on the south side of this ditch there was a small levee or berm designed to hold the surface water in the ditch since the ditch carried only surface water. The Altenderfer crossing included placing rock in the bottom of the ditch which built up the bottom.

A neighbor, Earl Arr, noticed that Altenderfer had cut down the berm and placed rock in the bottom of the ditch, and called Dourne Altenderfer.[2] Arr told Dourne that his action in cutting down the berm on the ditch would result in Whyte being washed out. Altenderfer replied that was what he intended to do. The evidence is undisputed that the Altenderfer tract drains to the south and slightly west. The natural result of water overflowing the ditch would be to flow to the south and west onto the Whyte property.

After Altenderfer lowered the berm on the ditch on his property, Whyte constructed a levee entirely on his own land commencing on the south side of the ditch and running south to the southwest corner of the Altenderfer tract and then east along the south side of the Altenderfer tract. The result of this levee was that water accumulated in the southwest corner of the Altenderfer tract which flooded a bean crop.

On July 26, 1979, Altenderfer hired DeVaul to remove the portion of the Whyte levee which covered the way of necessity. DeVaul entered the Whyte land with his bulldozer and started removing the levee when Whyte appeared. Whyte requested DeVaul not to remove the levee but Dourne instructed DeVaul to continue work, which he did. DeVaul removed the levee on the

20 feet covered by the way of necessity and cut a ditch along the west side of the way of necessity for a distance of approximately 600 feet. DeVaul testified that Altenderfer told him he wanted to remove the levee and cut the ditch to allow the water to drain from his land.

The court made extensive findings of fact. It found that the evidence failed to establish that either a natural watercourse or established drainway existed along the Altenderfer tract and, therefore, the Whyte levee did not obstruct any such watercourse. The court found that the water impounded at the southwest corner of Altenderfers' property was surface water which came entirely from the Altenderfer property. The court found the existence of the private way of necessity and found that the levee constructed by Whyte did not obstruct this way and did not restrict the Altenderfers' use of the way. The court found that the act of Altenderfer in cutting the levee and ditch was intentional, unlawful and wrongful.

In the trial court and on this appeal the Altenderfer position is that the levee constituted an obstruction of their way of necessity and, therefore, they were entitled to remove the levee. They contend the ditch cut along the west side was nothing more than a grader ditch to remove water from the private way.

The Altenderfer position is not sustained by the law. In *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983 (1933), the court discussed the relative rights of the dominant and servient estate when a private roadway is involved. The court held at 987[6–9] that the owner of the servient estate retains "the right of full dominion and use of the strip except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement." This rule was quoted with approval in *Stickle v. Link*, 511 S.W.2d 848, 857[13, 14] (Mo.1974).

---

2. Raould Altenderfer did not testify because of health, but it was stipulated that he was equal-

ly responsible with Dourne for all of the acts attributed to the Altenderfers.

 Numerous witnesses testified that the levee was sloped so that vehicles and farm machinery could easily cross over. On this evidence the court found that the construction of the levee across the private way did not interfere with the Altenderfers' use of the private way. There was substantial evidence to support the court's finding that the construction of the levee did not interfere with the Altenderfers' reasonable enjoyment of the dominant estate which they held in the private way. There was substantial evidence to show that the Altenderfers did not remove the levee and cut the ditch alongside the private way because the levee interfered with their right to travel but that such acts were committed solely for the purpose of draining the water which was standing on the Altenderfer tract.

In constructing the levee to keep surface water from running onto their land, the Whytes were exercising their rights to treat surface water as a common enemy. *Camden Special Road Dist. of Ray County v. Taylor*, 495 S.W.2d 93 (Mo.App.1973). There was evidence that the Altenderfers could have crossed the ditch at about its mid point on the Altenderfer property without the necessity of lowering the berm and without the danger of allowing excess water to flow toward the south and west. The court was justified by the evidence in finding that the Altenderfers wrongfully removed the Whyte levee solely for the purpose of allowing the surface water to flow from their land onto the Whyte land. The evidence also would justify the conclusion that the Altenderfers had constructed the crossing of the ditch in such a manner as to allow water to flow south and west in order to damage the Whyte property in retaliation for the closing of the crossing on the Whyte property. Thus, the judgment of the court is supported by substantial evidence.

The Altenderfers rely upon *State ex rel. State Highway Commission v. Johns*, 507 S.W.2d 75 (Mo.App.1974), for their position that any obstruction in the private way in this case is subject to removal and that the Altenderfers were justified under that case in cutting out the levee and restoring the way to its original condition. In *Johns* the court, at page 77[1], distinguished cases involving private easements for roadway from cases involving public easement, as *Johns* did. Thus, the rule applied in *Johns* does not apply in this case involving a private easement. The cases cited by the Altenderfers involving private easements are not applicable on their facts and none of them announce a rule contrary to that stated in *Stotzenberger* and *Stickle.*

The Altenderfers do not question the amount of damages, but only the propriety of the award of any damages. The judgment of the trial court in favor of the Whytes is supported by substantial evidence and does not erroneously declare or apply the law. In that circumstance it will be affirmed. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

 The judgment for the Whytes on the Altenderfer counterclaim is also supported by substantial evidence. In fact, Dourne, at least tacitly, conceded that there was no natural waterway or drainway across his south line that was obstructed by the Whyte levee. That judgment is likewise affirmed under the rule in *Murphy.*

The judgment is affirmed.

All concur.