**STATE ex rel. KING, Atty. Gen., v. FRIAR et al.**

No. 22639.    Sept. 26, 1933.

J. Berry King, Atty., Gen., and W. C. Lewis, Asst. Atty. Gen., for plaintiff in error.

O. F. Mason, for defendants in error.

OSBORN, J. This is an action for injunction filed in the district court of Ottawa county, by the state of Oklahoma, on relation of the Attorney General, against Tessie Friar and J. F. Irby, to enjoin them from constructing a filling station in such manner as to encroach upon State Highway No. 66, in the incorporated town of Afton. After a hearing the court denied the application for injunction, from which ruling the state has appealed. The parties will be referred to as they appeared in the trial court.

The action was filed at the direction of the State Highway Department. It is alleged that State Highway No. 66 has been constructed through the town site of Afton, upon First street in said town; that the right of way is 70 feet in width according to the town ordinance; that defendants are constructing a filling station on lot 1, block 17, of Crowell's addition to the town of Afton, which structure protrudes on the right of way of the highway a distance of five feet; that if the filling station is so constructed it will greatly interfere with the right of the public to use of the highway; that plaintiff has no plain, speedy, and adequate remedy at law.

Defendants allege that said highway is completed and open for travel and consequently is wholly under the jurisdiction of the town of Afton; that according to said town ordinance the curb is 15 feet from the center line of said First street, and that there are now ten filling stations on said First street in operation which protrude from 10 feet to 15 feet into said right of way. They deny that said filling station constitutes any obstruction whatever in said street, and allege that the State Highway Department has no authority to prosecute this action.

There is little, if any, dispute as to the facts in the case. It is shown that the filling station, if constructed according to the plans indicated in the evidence and according to the concrete bases for the pumps already laid, will be located 30 feet from the center line of the 70-foot right of way, which would encroach upon said right of way five feet. As the cause is submitted in the briefs, it is conceded that the only question of consequence to be determined herein is one of law, and that is, whether or not the State Highway Commission is authorized to maintain this action.

The defendant contends that the town of Afton, which has a population of 1,219, as shown by the census of 1930, is vested with sole jurisdiction over the streets of said town, especially by virtue of section 13, chap. 48, S. L. 1923-24, which provides:

"The State Highway Commission shall have no authority to grade or drain any highway, street or alley within the corporate limits of any city, or incorporated town, but is hereby given authority to hard surface within the limits of any city or incorporated town, any street which has been properly drained and put to grade and which is a continuation of the state highway system, provided, that no hard surfacing within the corporate limits of any incorporated city or town, done under the provisions of this section, shall exceed eighteen (18) feet in width; and after the completion of such improvement, the same shall be maintained by the city or town, and said city or town shall rest under the same obligations for the care of such highway as is now or may hereafter be provided for the care of federal aid roads. This section shall apply with equal force to the hard surfacing of county highways by the county commissioners."

Said section was thereafter amended by chapter 82, S. L. 1927, as follows:

"The State Highway Commission shall have authority to drain, grade, hard surface, and construct necessary bridges and underpasses on any highway, street or alley within the incorporated limits of any city or town, which highway, street or alley is a continuation of the state highway system; provided, that said hard surfacing within the limits of said city or town, done under the provisions of this section, shall be eighteen (18) feet in width; and after the completion of such improvements or any of them, they shall be maintained by the city or town, and said city or town shall rest under the same obligations for the care of such highway as is now or may here-

after be provided for the care of federal aid roads. This section shall apply with equal force to the hard surfacing of county highways by the county commissioners."

Defendants contend that, since the duty of maintenance of the state highway within the corporate limits of the city devolves upon the city after its construction, the jurisdiction and authority of the Highway Commission is at an end, and that any action of this nature would have to be maintained by the city officials.

The Attorney General contends that the encroachment of said filling station on the public highway constitutes a public nuisance in that it interferes with the reasonable use of the highway by the public and makes said highway more dangerous for travelers thereon, and is subject to abatement by any public officer.

Section 7870, C. O. S. 1921 (11489, O. S. 1931), defines a "nuisance" as follows:

"A 'nuisance' consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First: Annoys, injures or endangers the comfort, repose, health, or safety of others; or,

"Second: Offends decency; or,

"Third: Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or **highway**; or,

"Fourth: In any way renders other persons insecure in life, or in the use of property."

Section 7871, C. O. S. 1921 (11490, O. S. 1931), provides that a nuisance is public when it affects any considerable number of persons, and section 7880, C. O. S. 1921 (11499, O. S. 1931), provides that a public nuisance may be abated by any public body or officer authorized thereto by law.

In the case of Standard Oil Co. v. Commonwealth (Va.) 109 S. E. 316, it is said:

"Obstructions or encroachments on a highway or anything which interferes unreasonably or unnecessarily with the use of the highway by the public, or which makes the highway more dangerous for the travelers thereon, constitute a public nuisance per se, even when they do not actually operate as an obstruction to travel."

See, also, 29 C. J. 616; 13 R. C. L. 160; First National Bank of Montgomery v. Tyson, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399; City of Pittsburgh v. Pittsburgh & L. E. R. Co. (Pa.) 106 Atl. 724; Price v. Travis (Va.) 140 S. E. 644, 56 A. L. R. 209; County Commissioners of Caroll County v. Rickell (Md.) 126 Atl. 711; Smith v. McDowell, 148 Ill. 51, 22 L. R. A. 393; City of Eugene v. Garrett (Ore.) 170 P. 731.

The Attorney General relies upon the rule announced in the case of State ex rel. Hoffman v. Swift and Co., 127 Kan. 817, 275 P. 176, 65 A. L. R. 696, wherein it is said:

"The fact that the legal title to the streets of a city is vested in the county, and the control of the streets is conferred upon the city, does not deprive the state, on the relation of the county attorney or the Attorney General, from maintaining an action to enjoin and abate a public nuisance which is being conducted and maintained in the street."

In the case of Rider v. Porter (Ga.) 95 S. E. 284, it is said:

"A court of equity has jurisdiction, at the instance of a solicitor general, to restrain by injunction the continuance of a public nuisance.

"Any permanent structure in a public road which materially interferes with travel therein is a nuisance per se. Columbus [Mayor, etc., of City of Columbus v. Jaques, 30 Ga. 306] and Augusta [City Council of Augusta v. Reynolds, 122 Ga. 754] Cases, supra; Robins v. McGehee, 127 Ga. 431, 56 S. E. 461. Any obstruction in a public road, permanent in nature or continuously maintained at a particular point on a certain portion of the road, which interferes with the free use of the road by the public is a public nuisance. At common law ' any contracting or narrowing of the highway is a nuisance.' 1 Russ. Cr. 346. It is immaterial that sufficient space is left on either side of the obstruction for the passage of the public, relatively to the question here decided. The public have the right to the unobstructed use of the whole road as it was acquired by the county. 3 Elliott on Roads & Streets (3d Ed.) sec. 828."

See, also, Eble v. State, 77 Kan. 179, 127 Am. St. Rep. 412, 93 P. 803; 29 C. J. 627; State v. Rabinowitz, 85 Kan. 841, 118 P. 1040. 39 L. R. A. (N. S.) 187; People v. Decatur, S. & St. L. Ry. Co., 120 Ill. App. 229: Needham v. New York & N. E. R. Co., 152 Mass. 61, 25 N. E. 20; State ex rel. Ellis v. Mulligan, 173 Mo. App. 718, 160 S. W. 9: Reinhardt v. Chalfant (Del.) 110 Atl. 663; Roloson v. Barnett, 243 Ill. 130, 90 N. E. 228; State v. Vandalia, 119 Mo. App. 406, 94 S. W. 1009; State ex rel. Crosby v. Dayton & S. E. R. Co., 36 Ohio St. 434.

The rule announced in the cases above cited is sufficient to sustain the contention of the Attorney General as to his author-

ity to proceed herein. However, there is some diversity of opinion in regard to said rule. See Attorney General v. Bay State Brick Co., 115 Mass. 431; Attorney General v. Murray, 225 Mich. 170, 196 N. W. 446. We believe the majority rule is supported by the better reasoning. Under the state of facts in the instant case, there is also involved a question of public safety. Attention is directed to the testimony of Dudley Jones, an engineer of the State Highway Commission, as follows:

"Q. Mr. Jones, what is the radius that this curve, that goes southwest of the town of Afton, on the south First street? A. A. The radius is 1,146 feet. Q. How wide is the street in front of the filling station involved in this action? A. Seventy feet. Q. Have you made any observation, Mr. Jones, from any distance north of the radius of this curve to determine what an automobile parked in front of this station would produce? A. I have examined that. Q. What was the result of your examination? A. At a little over 400 feet west of this filling station a curve to the west begins and with an automobile parked at the pumps the sight-distance is handicapped. With a car parked on the outside of the pumps nearest to the paving, the line of sight, going through Afton, is considerably handicapped. This pavement being 20 feet wide and fairly straight, it is a high speed road. Q. I want to show the visibility, Mr. Jones,—the radius of this curve from an engineer's standpoint—about what is the speed on this highway at this place? A. With a radius, curving like that, that is practically no handicap to speed of cars; they can maintain full speed and I want to state this that with my experience in maintaining and handling traffic on nearly 800 miles of road that 1,000 feet sight-distance is a small amount of distance. Q. 1,000 feet—taking your map—taking this point here (indicating a point on map) this point near the filling station structure proper and trace that for 1,000 feet back to the west, what station? A. Near station 80. Q. Will you explain to the court what you mean by 1,000 feet sight-distance? A. Assuming a car is on the highway at station No. 80 on the south side of the road, traveling toward the filling station; assume another car at the filling station pump, parked on the highway, nearest to the highway, then a line of sight from the first car mentioned to the second car mentioned intersects the paved highway within about 200 feet of the filling station to be blocked, and then assuming a third car, going west, approaching the filling station, both cars say traveling 50 miles per hour each, then each car has only 500 feet

Q. And that they would meet—where? A. They would probably meet near the beginning of that curve."

The trial court may have concluded that the above testimony did not show an appreciable hazard to the traveling public by the encroachment of the filling station upon the right of way. In this connection we must take note of the increasing toll of human life, limb, and property on the high-speed thoroughfares of this state, which requires those who are responsible for the construction of the highways, not only to use reasonable precaution in the construction thereof to make said highway as safe as possible for travel, but also to include every possible factor of safety. Highway No. 66, sometimes referred to as the "Main Street of America", is one of the principal highways of the state, upon which thousands of our citizens travel. It is elementary that in some cases the rights of an individual citizen or a small group of citizens must give way when the welfare of a great number is affected.

The fact that other filling stations are located within the city limits which also incidentally encroach on the public highway constitutes no defense to this action, for the reason that:

"Laches and estoppel do not operate against the state, and no procrastination of public officials prejudices the state, and their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide.

"The state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns." State ex rel. Veale v. Paul (Kan.) 214 P. 425.

The statutes above quoted by defendants are not sufficient to preclude the state from maintaining an action for the abatement of an encroachment on the public highway within an incorporated town which affects the welfare and safety of a great number of citizens.

The judgment of the trial court is reversed and the cause remanded, with directions to grant the injunction in accordance with the prayer of plaintiff's petition.

RILEY, C. J., and SWINDALL, McNEILL, and WELCH. JJ., concur. CULLISON, V. C. J., and ANDREWS, BAYLESS, and BUSBY, JJ., absent.