**STATE ex rel. KING, Atty. Gen., v. McCURDY.**

No. 25709. April 9, 1935.

Robert D. Crowe and R. A. Keller, for plaintiff in error.

Charles Miles, for defendant in error.

PER CURIAM. This is an action for injunction filed in the district court of Beaver county by the state of Oklahoma on the relation of the Attorney General against William J. McCurdy to enjoin the operation of a filling station alleged to be located on a public highway, as being a nuisance. The case was submitted to a jury, and from a verdict and judgment thereon for the defendant, the state has appealed. The parties will be referred to as they appeared in the trial court.

The action was filed at the instance of the State Highway Commission, and it is alleged that a certain public highway has been established by public user for a period of over 40 years, extending south from the town of Beaver, which has been designated as a state highway and is being so maintained; that the defendant is maintaining and operating a filling station, with appurtenances, within the limits of such highway, which constitutes a nuisance, obstructing the use of said highway; that the plaintiff has no plain, speedy, and adequate remedy at law, and that such nuisance should

446

be abated and the defendant enjoined from maintaining such filling station upon the public highway and required to remove the same therefrom.

The defendant claims that he is the owner of the title to the tract of land on which said filling station is located, and denies that the same is part of a public highway or that any easement thereon was ever acquired by the traveling public. For further defense, defendant alleges that if any part of said tract was ever used as a public highway, the same was wholly abandoned as such about the year 1925, prior to the erection of said filling station; that said tract was abandoned by consent of the county commissioners, as well as by abandonment for public travel; that he paid a valuable consideration for said tract, placed valuable improvements thereon without objection of the State Highway Department, and that the state is estopped by its actions from claiming said tract as against the defendant.

At the outset of the trial in October, 1933, counsel for both parties questioned whether it was a case for a jury, but the court impaneled a jury. It is our view that the case was one purely of equitable cognizance, and that the jury was proper in an advisory capacity only.

The only proposition urged in plaintiff's brief is that the court erred in overruling the plaintiff's motion for judgment at the conclusion of all of the testimony, and hence the sole question for our determination is whether the clear weight of the testimony entitled plaintiff to the injunctive relief prayed for, or whether there was any disputed question of fact upon which the jury might properly advise the court.

1. We have carefully examined the record in the trial court, which is far from satisfactory, and much of the testimony was vague and indefinite. We are not given the benefit of any plat, drawing or map which clearly shows the location of the alleged highway, of the tract of land claimed by the defendant, or of the filling station, with respect to the traveled highways at the point in question, although the witness W. H. Thomas was examined and cross-examined at length with reference to locations on a plat and made numerous marks and indications not appearing on the only plat in the record. However, the evidence sufficiently shows, without serious conflict, that a road some 100 feet in width, extending south from Douglas avenue in the town of Beaver, approximately bisecting the southwest quarter of section 18, township 4 north, range 24 east, and extending to the section line running east and west between sections 18 and 19, had been continuously used as a public highway for a period from 25 to 35 years before the trial, and had been maintained as such for about 15 years. This road did not extend south beyond the east and west section line, but was used for travel between the town of Beaver and points along such section line to the east and west. It further appears in the evidence, without serious conflict, that sometime between the years 1926 and 1929, in accordance with the prevailing custom of accommodating automobile traffic, the corners at the intersection of such north and south highway with the east and west section line highway were rounded, and thereafter travelers did not use the center of the intersection in making turns; this left a triangular tract in the center of the intersection, not graded, upon which water sometimes stood, and it grew up in weeds. About the year 1929 one Brown, who owned the adjoining tract of land, proposed to build a filling station on this triangular tract, and consulted with the county commissioners with reference thereto. No record of any order vacating this tract appears to have been made by the county commissioners, but one of the then members of the board testified that he gave his verbal consent. Brown proceeded to build the filling station, and thereafter, in the year 1931, conveyed a 100-foot square tract upon which the same was located to the defendant McCurdy, who has ever since operated and maintained the same. Subsequently, the north and south highway having been designated as a U. S. Highway, the State Highway Commission proposed to extend the same south of the east and west section line, through section 19, and demanded the removal of the filling station as being an obstruction in said highway.

Under this evidence we find that an easement for a public highway approximately 100 feet wide, extending from Douglas avenue in the town of Beaver, south to the east and west section line highway between sections 18 and 19 was established by prescription, the same having been used without interruption by the traveling public for more than 15 years. Title by prescription is recognized by O. S. 1931, section 11729, as follows:

"Title by Prescription: Occupancy for the period prescribed by Civil Procedure, or any law of this state as sufficient to bar an action for the recovery of the property,

confers a title thereto, denominated a title by prescription, which is sufficient against all."

While this statute does not appear to have heretofore been applied by this court to easements for public highways, it is generally recognized in other jurisdictions that an easement for highway purposes may be so created.

Dillon, Municipal Corporations (4th Ed.) p. 753, par. 637:

"Such intent (to dedicate) will be presumed against the owner where it appears that the easement in the street or property has been used and enjoyed by the public for a period corresponding with the statutory limitation of real actions. * * *"

29 C. J. 373:

"To establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely under claim or color of right, and not merely by the owner's permission, and continuously, and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute. When these conditions are present, a highway exists by prescription; otherwise not."

Elliott, Roads and Streets, page 123:

"What the original intention of the landowner was ceases to be of importance after the lapse of the limitation prescribed by the statute. Twenty years use by the public, under claim of right evidenced by use, will give a right to the road or street, no matter what may have been the owner's intention." Reed v. Northfield, 13 Pick. (Mass.) 94; Wilson v. Pioneer Coal Co. (Ky.) 231 S. W. 37.

Since, under O. S. 1931, section .99, actions for recovery of real property are barred after 15 years, the evidence in this case clearly established that an easement for a public highway has been created as claimed by the plaintiff.

2. This disposes of the first contention of the defendant. It is next claimed that even if such highway easement was created, the portion thereof upon which defendant's filling station is located was abandoned following the rounding of the corners of such highway. While, as heretofore observed, the evidence is uncertain as to the size and exact location of this triangular tract occupied by the filling station, it appears that, excluding 33 feet within the boundaries of the east and west section line highway, the base of the triangular tract is along the north boundary of such highway and the

apex of the triangle is some 67 feet north, bisecting the center of the 100-foot north and south highway, with one roadway turning to the southeast and another to the southwest into the section line highway.

It is contended that this portion of the road was abandoned by the board of county commissioners, but the defendant failed to show any record or official action of the board. We are clearly of the opinion that the verbal consent of a member of the board to the use of this portion of the public highway for private purposes was wholly insufficient to constitute a formal vacation or abandonment thereof as contemplated by O. S. 1931, section 10143, and was without legal effect. Western Paint & Chemical Co. v. Board of Commissioners, 161 Okla. 300, 18 P. (2d) 888.

It is next contended that an abandonment was effected so as to cause reverter to the abutting fee owner by nonuser of this triangular tract for a period of four to six years prior to the institution of this action in the year 1932. We have carefully examined the authorities cited in the briefs of both parties, and the prevailing rule seems to be laid down in 13 R. C. L., section 57, page 64, as follows:

"* * * But the mere diversion of travel from a small portion of the way which the public authorities have failed to make passable will not work a discontinuance thereof under such a provision, even though continued for the statutory period. Some courts hold that a portion of a street or highway may be lost by nonuser. Others, however, take the position that mere nonuser of a portion of the width of the way will not work an abandonment of the public rights therein; that if the way is originally laid out as of a certain width the public is entitled to a way of that width, notwithstanding the wrought part and the part actually used by travelers may have been less than that, and that the traveled path, as the growing wants of the public may require, provided such improvements are kept within the limits of the way as originally laid out."

In most cases it is held that the period of nonuser must be at least as long as that required to establish title by adverse possession.

The position of defendant is summarized in his brief as follows:

"To constitute an abandonment of an easement of right of way, there must be not only an actual abandonment but an intention to abandon, and this is a question of fact for the jury or the court sitting as

a trier of the facts under all the evidence." Citing various Oklahoma cases.

In each of the cases cited, however, it appears that the alleged abandonment had been for a longer period of time than the prescriptive period of 15 years provided in O. S. 1931, section 99, and hence, since under the undisputed evidence the nonuser of this triangular tract had extended for not longer than six years prior to the institution of this action, the abandonment had not continued for a sufficient period to require submission to the jury of the question of whether there was an intention to abandon. Furthermore, it was undisputed that this tract—lying in the center of the intersecting highways—had never been fenced off or separated from the rest of the highway prior to the erection of the filling station about the year 1929, excepting only that it had not been graded or used by the travelling public for a few years. This short nonuser could hardly be the basis for an assumption that the full width and extent of the highway easement as theretofore established by long user would not be again needed in the future as the country developed and highway traffic increased, or that, as it now appears, it would not be required for use of traffic to the south after extension of the north and south highway south beyond the section line. As aptly stated in 29 C. J. 537:

"The limited use will not lessen the right of the public to use the entire width of the road whenever the increased travel and exigencies of the public render this desirable." Citing Quinn v. Baage, 138 Iowa, 426, 432, 114 N. W. 205, and other cases.

A case closely in point on the facts is Maire v. Kruse, 85 Wis. 302, 55 N. W. 389, 26 L. R. A. 449, in which the syllabus reads:

"Owing to a hill at the point where two roads came together at right angles along section lines, travel had diverged, leaving one road and entering the other a few rods from the junction. Held, that the parts of the roads which had ceased to be used were not discontinued and abandoned within Rev. St. § 1294, as amended by Laws 1882, c. 253 (1 Sanb. & B. Ann. St. 801), providing that any highway which shall be entirely abandoned as a route of travel, and on which no highway tax has been expended for five years, shall be considered legally discontinued, and the land shall revert to the owners."

No decision is called to our attention in the briefs of the parties nor has independent research developed any wherein abandonment of a part of a public highway and

reverter to the former owner is adjudged where the portion of such highway involved is separated from the abutting property by a traveled highway and does not immediately adjoin or abut upon the same. The cases relied upon by defendant are where a dedicated highway has never been opened or used by the traveling public, or where an existing highway has been entirely abandoned by relocation, or where a strip immediately abutting property of the claimant has been wholly abandoned for the statutory period of time. We therefore conclude that the portion of the highway in question not having been legally vacated and not having been abandoned for the statutory period of time, there was no question of fact as to intent to abandon properly submitted to the jury.

3. It is finally contended by the defendant that the state is estopped from questioning the title or possession of the defendant from the fact that he purchased this tract for a valuable consideration in good faith and without notice of any claim by the state. This contention has been decided by this court adversely to the defendant in the case of State ex rel. King v. Friar, 165 Okla. 145, 25 P. (2d) 620—not referred to in the briefs—in which this court quoted with approval State ex rel. Veale v. Paul, 113 Kan. 412, 214 P. 425, as follows:

"Laches and estoppel do not operate against the state, and no procrastination of public officials prejudices the state, and their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide.

"The state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns."

In this connection we desire to condemn the practice of burdening records with unnecessary documentary matter as was done in this case, in which the defendant's counsel introduced in evidence an abstract occupying over 100 pages of the record, remarking that the same was to show good faith of the defendant and would not be read to the jury. If such good faith were material, it could have been sufficiently established by testimony that he secured an abstract and an attorney's opinion.

4. The question of whether the existence of the filling station in question and operation of the same in the intersection of these highways is a nuisance and subject to abatement in an action such as this by the

state on the relation of the Attorney General, has likewise been squarely adjudicated by this court in State ex rel. King, Attorney General, v. Friar, supra, in which we held:

"The Attorney General contends that the encroachment of said filling station on the public highway constitutes a public nuisance, in that it interferes with the reasonable use of the highway by the public and makes said highway more dangerous for travelers thereon and is subject to abatement by any public officer.

"Section 7870, C. O. S. 1921 (section 11-489, O. S. 1931), defines a 'nuisance' as follows:

"'A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"'First. Annoys, injures or endangers the comfort, repose, health or safety of others; or,

"'Second. Offends decency; or,

"'Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

"'Fourth. In any way renders other persons insecure in life, or in the use of property.'

"Section 7871, C. O. S. 1921 (section 11-490, O. S. 1931), provides that a nuisance is public when it affects any considerable number of persons, and section 7880, C. O. S. 1921 (section 11499, O. S. 1931), provides that a public nuisance may be abated by any public body or officer authorized thereto by law.

"In the case of Standard Oil Co. v. Commonwealth, 131 Va. 830, 109 S. E. 316, it is said: 'Obstructions or encroachments on a highway or anything which interferes unreasonably or unnecessarily with the use of the highway by the public, or which makes the highway more dangerous for travelers thereon, constitute a public nuisance per se, even when they do not actually operate as an obstruction to travel.'

"See, also, 29 C. J. 616; 13 R. C. L. 160; First National Bank of Montgomery v. Tyson, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; City of Pittsburgh v. Pittsburgh & L. E. R. Co., 263 Pa. 294, 106 A. 724; Price v. Travis, 149 Va. 536, 140 S. E. 644, 56 A. L. R. 209; County Commissioners of Carroll County v. Rickell, 146 M. D. 463, 126 A. 711; Smith v. McDowell, 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393; City of Eugene v. Garrett, 87 Ore, 435, 169 P. 649, 170 P. 731."

In that case the encroachment was for five feet only. To an even greater extent is the filling station involved in this case a nuisance and an obstruction of the public highway, located as it is in the very center of the intersection of two highways—obstructing not only the view of travelers from either direction, but encouraging the parking and congregating of automobiles. We take judicial notice of the fact that filling stations so located in other parts of the state have been the scene of serious accidents to cars rounding turns at excessive speed or for other reasons.

To permit a filling station to remain in the center of the intersection of two public highways would establish a precedent fraught with danger to the traveling public—already subjected to constantly increasing hazards of the road. As we said in State v. Friar, supra:

"In this connection we must take note of the increasing toll of human life, limb, and property on high-speed thoroughfares of this state, which requires those who are responsible for the construction of highways not only to use reasonable precaution in the construction thereof to make said highway as safe as possible for travel, but also to include every possible factor of safety."

Following this controlling decision, we hold that the filling station in question is a public nuisance, dangerous to travelers on the public highways, and subject to abatement upon an action by the state.

In this connection we call attention to the misdescription of the highway in question in plaintiff's petition, which may be corrected to conform to the proof.

We accordingly hold that the trial court erred in not sustaining the motion of the plaintiff for judgment at the conclusion of the testimony, and the case is reversed, with directions to render judgment as prayed for.

The Supreme Court acknowledges the aid of Attorneys R. A. Kleinschmidt, Gentry Lee, and Edmund Lashley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Kleinschmidt and approved by Mr. Lee and Mr. Lashley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.