## SIPE v. DALE et al.

No. 28170.   May 31, 1938.

Rehearing Denied June 21, 1938.

Joe B. Crockett, for plaintiff in error.

Pryor & Wallace, for defendants in error.

PHELPS, J.   Midway between the cities of Wewoka and Holdenville is a small community known as Jackson's Corner. There the paved highway leading west from Holdenville joins the paved north and south highway between Wewoka and Sasakwa. In the northeast quadrant of the intersection, and some distance from the actual intersection, is a long sweeping curve of the roadway, so that persons traveling between Wewoka and Holdenville may accomplish the 90 degree change of direction without making a square turn. A roughly triangular tract of land thus lies between the highways on the south and west sides thereof and the curve on the northeast side. This tract of land is owned by the defendant Sipe.

Immediately across the road to the south of said tract is the home of plaintiffs, one of whom is an elderly lady who is an invalid and is cared for by the other plaintiff, who is her daughter and guardian. The elderly plaintiff had lived in this home for 22 years; she owned it and it was the only home she had. The defendant Sipe began the erection of a log "pig stand," beer parlor, and dance hall on the triangular tract of land between the highways, a pig stand being a place where it is represented that pig sandwiches are sold. Plaintiff remonstrated, pointing out that in view of the fact that it was not within a city and thus subject to municipal regulations the dance hall, beer parlor, etc., would probably become a nuisance and seriously disturb the reasonable enjoyment of her home. The defendant Sipe, however, proceeded with the construction and upon completion leased it on a monthly basis to one Runt Smart, the other defendant, who operated it until after the institution of the present action, and

then sold his business to the present op-. erator.

It was not long after the business began until this action for an injunction was filed. Application was also made for a temporary restraining order against the operation of the business, and a hearing was had on that application, at the conclusion of which the trial court found that the defendants were conducting a lawful business, but that it was being conducted in such a manner as to interfere with the peace and quietude of the community. The court further found that the manner of conducting the business was such as to annoy, injure, or endanger the comfort, repose, health, and safety of others residing in the neighborhood, and especially the plaintiffs, and that the plaintiffs were entitled to a restraining order. The judge refused to enter an injunction at this time, however, reciting in his order that he felt sure the defendants would not in the future conduct their business so as to interfere with the peace of their neighbors. He thereupon issued a restraining order for a period of 60 days, restraining the defendants from conducting the place in such a manner as to interfere with the peace and quietude of the plaintiff, and enjoined them from conducting the dance hall on the Sabbath and running the same after 1:00 a. m.

A few days later, and also about a month later, the defendants were cited for contempt, in that they had disobeyed the restraining order. On both occasions they filed appearance bonds, and hearings thereon apparently were postponed until the trial of the case on its merits, for a permanent injunction.

The trial court, after hearing much evidence, granted the permanent injunction, especially finding that the business constituted both a public and private nuisance and that the conduct of the dance hall at that place, together with the sale of beer, caused people to congregate there in large numbers, many of whom were undesirable characters and a number of whom were drunk, and further found that the general conduct of the place was such as to insult public decency. The trial court ordered that the nuisance be abated, and the defendants and their successors, transferees, and assigns were given ten days in which to abate said nuisance, upon the failure of which the sheriff was directed to close the place, take charge thereof and place a lock on the door. The trial judge enjoined the parties from operating and maintaining a dance hall in that building or the sale and dispensing of beer at that location.

Only the owner, Sipe, appeals. He does not contend that the evidence fails to sustain the court's finding that the business as operated was a public nuisance. After the temporary restraining order was issued, in which the trial judge gave the defendants a fair chance to conduct their business with due regard to the rights of others, the condition became worse. The place often stayed open all night, with the raucous music and other noise at its height, with car lights shining on the windows of the plaintiff's home and the homes of others living in that vicinity; with drunken men and women, drinking liquor, cursing loudly outside of the place and engaging in lewd practices, and general pandemonium prevailing at the hours when the plaintiffs and others were futilely attempting to get their needed sleep. All of the persons living near the establishment testified to this condition except those who were working for the defendants. One man and his wife, living close to the place, were awakened at night by drunken men peering in the windows, and lying about in the front yard. Another was harassed by having empty whisky bottles tossed on her porch or lawn at all hours of the night. Acts of public indecency, which need not be described, frequently occurred. The plaintiffs and others, including young children, were almost constantly faced with this intolerable situation in their immediate presence. Such things can be regulated by ordinance in a city or town, but where it occurs in a small unincorporated community, rural in its nature, about the only relief the parties may be sure of as a matter of right is an action for the abatement of the nuisance. Such an action is authorized by 50 Okla. St. Ann., sec. 10; O. S. 1931, sec. 11498.

The defendant's first proposition is entirely inapplicable to the pleadings and the evidence and requires no discussion.

Propositions 2 and 4 may be discussed together. Therein defendant asserts that a landlord is not responsible for his tenant's improper use of the leased premises, and that where the evidence shows that the landlord had no control or management of the business, an injunction against him is improper, citing certain decisions from other jurisdictions; and also contending that an injunction is an action in personam, and can operate only against the parties causing the injury. On the other hand, the

plaintiff asserts that this is not an action in personam, but is in rem, against the property itself.

There is no necessity of deciding, and we do not decide, which of the foregoing contentions, whether the plaintiff's or the defendant's, is correct. The judgment is proper, even though defendant's propositions be assumed as true. The evidence amply justifies the finding that the defendant Sipe, who is the landlord, acquiesced and joined in the perpetuation of the nuisance when he renewed the lease to defendant Smart's successor. It must be borne in mind that this action was started against the landlord and the tenant which he had at that time. During the pendency of the litigation his tenant sold to the succeeding tenant, to whom the landlord executed a new lease, with knowledge of the nuisance, and apparently took no precaution nor made any attempt to alleviate the situation. He could have done so. Instead, the condition became worse, and it would be too far-fetched to say that the landlord, by his own acts, did not thereby participate in the maintenance of the nuisance to such an extent as to justify the judgment entered against him, even in personam. There is little doubt that, if possible, he would enter into a new lease with the same purpose in view. Though our statutes do not cover the precise situation before us in this connection, the spirit of 50 Okla. St. Ann., sec. 5, sec. 11493, O. S. 1931, is in accord with our reasoning. It is there provided that every successive owner of property who neglects to abate a continuing nuisance upon or in the use of the property, which nuisance was created by a former owner, is liable therefor in the same manner as the one who first created it. The defendant Sipe, though not a "successive" owner, is by analogy in the same position. If in the first place he could not prevent the effect of the business as conducted by his tenant Smart (and this question itself seems very doubtful, in view of the fact that he built the place for a dance hall and beer parlor), then clearly he could have prevented the new tenant from continuing the business in such form as to be a nuisance when with knowledge thereof he executed the new lease. We deem it unnecessary to discuss our statutory provisions on public and private nuisances, and the former decisions of this court on that subject. Those interested may read Title 50, Okla. St. Ann., in its entirety, and the numerous cases annotated thereunder. Several of them, in fact situations, are similar to the present case.

Defendant's third proposition is that a pig stand or dance hall is not a nuisance per se. We may readily assume the correctness of this proposition, and yet it must be admitted that though they do not constitute nuisances per se, they may become nuisances by their manner of operation. Champlin Refining Co. v. Dugan, 133 Okla. 20, 270 P. 559; State ex rel. King v. McCurdy, 171 Okla. 445, 43 P.2d 124; Jordan v. Nesmith, 132 Okla. 226, 269 P. 1096. Such was undoubtedly the case here.

Defendant's fifth proposition is that nothing which is done or maintained under the express authority of a statute can be declared a nuisance (sec. 11492, O. S. 1931, 50 Okla. St. Ann. sec. 4), and that since the sale of beer of not more than 3.2 per cent. alcohol by weight is specifically authorized by statute, the court had no authority to enjoin its sale. We fail to apprehend a proper connection between the proposition and the case. The fact that it is lawful to sell beer does not prevent an injunction against the sale thereof, if it is necessary to stop the sale in order to abate a nuisance which it and other circumstances would perpetuate. It is not the sale of beer in itself; it is the sale at that place, under the circumstances and in connection with the other conditions existing there. It is also lawful to sell buttermilk, caskets, gasoline; to cremate or embalm dead bodies; to operate cemeteries, mines, and to engage in hundreds of other pursuits, just as it is lawful to sell beer. Some of such businesses are conducted under the express authority or regulation of statutes. Yet if they are conducted in such manner as to disturb or interfere with the reasonable enjoyment of other people's property, they may be abated. This is especially true when such annoyances and even danger affect a whole community. That it is lawful to conduct a business, whether it be the sale of beer or any other product, does not mean that the operation thereof is not abatable if the manner of operation, under the circumstances of the case, constitutes a nuisance.

Likewise, too, it is lawful to dance, and it is lawful to sell and eat pig sandwiches. It is lawful to play music. But when all these things are combined to produce a situation wherein constantly the peace, repose, and safety of others are seriously interfered with, and the perpetrators of said nuisance are given every opportunity to become reasonable in the manner of conducting the business, and it becomes worse instead, clearly the law affords relief to

those innocent persons who are thereby made to suffer. Other instances, not involving the sale of beer at all, are easily conceivable whereunder the plaintiffs or their neighbors would equally have been entitled to an injunction. The decree does not forbid the defendant from conducting any profitable business there which will not interfere with his neighbors. The evidence clearly stamped the place as a public nuisance, in which case it is abatable in its entirety as used in that form of business.

We note a still further reason for affirming the judgment. The defendant landlord, who is the only party appealing, in his testimony stated that "As far as I am concerned, the court can close it 99 years. * * *" Such being his statement, and the evidence being overwhelmingly to the effect that the condition was much worse than has been described herein, and that it would so remain, what could the defendant expect the trial judge to do? He indicated his consent, and it is but reasonable under the circumstances that the trial judge should enter the decree accordingly, and even though the decree was not based solely upon such consent, the latter is strongly persuasive.

The judgment of the trial court is affirmed.

BAYLESS, V. C. J., and CORN, GIBSON, and HURST, JJ., concur.