**L. W. ZIMMERMAN and Bessie Zimmerman, Plaintiffs in Error,**

**v.**

**Cal NEWPORT, Defendant in Error.**

No. 40935.

Supreme Court of Oklahoma.

March 1, 1966.

Rehearing Denied May 31, 1966.

Application for Leave to File Second Petition for Rehearing Denied July 26, 1966.

Frank T. McCoy, Robert P. Kelly, Bruce W. Gambill, Pawhuska, for plaintiffs in error.

T. F. Dukes, Hominy, Hamilton, Kane & Kane, Pawhuska, for defendant in error.

BERRY, Justice.

This is an appeal from a judgment granting a permanent injunction. Plaintiff, defendant in error herein, sought an injunction prohibiting defendants, plaintiffs in error herein, from building or attempting to build a fence " * * * approximately 12 feet east of the west side of the 31 foot alley which has been maintained for many years by the City of Hominy, immediately west of

plaintiff's property * * *." The physical facts necessary to understanding the problem are disclosed by the descriptive explanation and the following diagram.

Block 22 of the original townsite of Hominy, Oklahoma, is bounded by the following streets: North Fourth Street on the north; North Price Street on the east; Main Street on the south; North Reagan Street on the west. A platted alley 20 feet wide traverses Block 22 from east to west. From North Fourth Street a platted alley 20 feet wide bisects the north half of Block 22, forming a T upon intersecting the east-

west alley. Plaintiff owns Lots 1–6, inclusive, which front on North Price and extend back 140 feet to the north-south alley. The lots immediately west across the alley are platted as Lots 19–24, inclusive. Plaintiff also owns Lot 24 in this northwest quarter of the block.

The issue presented by this appeal involves the use and control of the surface of Lots 19–23, inclusive. Originally these lots were owned by Daniel Brentes, a non-resident, incompetent whose guardian, Eva Morrow, occupied the premises until her death in 1959. Prior to her demise she had been replaced as guardian by her son, Clifford Morrow, who executed conveyance by which defendants took title. In May, 1960, defendants became the owners of Lots 22 and 23 by guardian's deed. By warranty deed executed October 30, 1961, the defendants took title to Lots 19–21, inclusive, except the east 35 feet of Lot 19, upon which is located a small cement building formerly utilized as the city jail, but now owned and used by a local bank. As presently used, after the alley passes the old jail it veers left and onto defendants' property.

Plaintiff first occupied Lots 1–4, inclusive, in 1934 under a lease, and since 1947 has been owner of the described property. Lots 1–4 are covered by structures which have been merged into one building 100 x 140 feet, all of which is utilized by plaintiff in operation of an automobile agency. Lots 5 and 6 are enclosed by a fence and devoted to outside cars. There are three entrances to plaintiff's building. The east entrance has a low, narrow driveway clearance which will not admit large trucks or school buses. The south entrance opens into the used car lot (5 and 6), but to keep water from running into the building from the south there is a paved drainage stoop which large trucks "can't hit square." Thus trucks cannot utilize this entrance, unless driven by very careful drivers. There is insufficient space inside the garage to allow large trucks to be turned around. The west entrance, facing defendants' property, is sufficient in height and width to allow ingress and egress of large trucks by utilizing the 20 foot alley and a portion of defendants' lots which adjoin the alley. As much as 30 feet is necessary for trucks to be able to negotiate this entrance.

In August, 1963, defendants began erection of a fence along the east side of their property near the platted alley line. Such fence would have interfered with plaintiff's use of the west (alley) entrance into his garage, since large trucks no longer would have been able to pass over some 12 feet of defendants' property in negotiating this entrance. The physical surroundings depicted and the circumstances related gave rise to the action wherein the judgment appealed from was rendered.

On August 20, 1963, the plaintiff filed suit seeking to enjoin defendants building a fence along the alley which would provide a barrier to the "driveway" between the properties, since such obstruction allegedly would obstruct use of the alley and driveway and result in injury and damages to plaintiff and to the public. This petition alleged plaintiff's purchase of a permanent easement from the former occupant of defendants' property. Temporary restraining order was issued upon the petition.

Defendants' answer admitted ownership, possession of premises and existence of alley as dedicated, and that a fence was being erected to prohibit unauthorized persons from using their property, but denied the fence was being erected for "spite" as alleged by defendants. A cross-petition based upon alleged damages, arising from interference with the fence and interference with defendants' construction of a sewer line, also was joined. A temporary restraining order issued enjoining plaintiff's interference with sewer construction, or harassing defendants in any matters pending final hearing. By appropriate motion and order defendants' prayer for money damages incurred from grant of plaintiff's temporary restraining order was stricken. No issue concerning the sewer line de-

fendants were laying into the platted alley is involved in this appeal.

Plaintiff then filed an amended petition alleging possession of his property for over 27 years by lease and purchase, and defendants' possession and control of the property above mentioned; that for over 20 years the alley had been maintained by the city as an alley 31 feet wide open to use by the general public and recognized as an alley of that width, and that right and title to the alley by prescription had been established; as longtime residents of city defendants knew this alley was so established, and upon acquiring ownership of their property defendants knew alley was more than 30 feet wide between plaintiff's property and their own; before filing of this suit defendants undertook to build a fence and obstruct more than 12 feet on west side of the alley, thereby obstructing use of the total width thereof. The petition further alleged unless defendants were restrained from building the projected fence plaintiff would suffer irreparable damage in operation of his garage business, since many vehicles brought to the garage for repair could not enter or be removed from the building if the fence were erected, and no other way existed whereby many vehicles could be brought into plaintiff's building. Permanent injunction to prohibit defendants erecting a fence was sought upon grounds same would cause detriment and disadvantage to plaintiff in his business, and also to the general public, and plaintiff was without adequate remedy at law.

By answer defendants admitted ownership of the lots as alleged, but plead that Lots 22 and 23 had been the property of an incompetent since 1931; no statute of limitations would run against the incompetent and defendants having acquired title under guardianship sale no limitations ran against them; the alley was only 20 feet wide and the city claims no greater width; some two years past the city had graveled the alley, and approximately one year prior to suit had covered the alley with oil and chat and at the same time had covered de-

fendants' property with their permission; plaintiff's building had three entrances readily accessible to his customers; about 1954 plaintiff purchased chickens and an existing chicken house on portion of Lots 22 and 23 now claimed to lie within the alley, and removed the existing fence with permission of the guardian's agent, at the same time agreeing with such agent this fence could be re-erected if the property was sold or the holder of the premises so desired; defendants had refused plaintiff's offer to purchase an easement 5 feet wide across the rear of their property; any use of defendants' property had been under permission granted by owner.

Plaintiff's reply denied defendants' plea of no statute of limitations, and that the alley was only 20 feet wide and had been improved by the city only within two years past. Plaintiff admitted his garage had three entrances, but alleged only the west entrance could be utilized for handling large vehicles; the alley had been maintained by the city at width of 31 feet for over 20 years, and to reduce width of the alley would make it impossible for many vehicles to be brought into plaintiff's garage. Plaintiff admitted purchase of chickens alleged, but asserted that at such time and at Mrs. Morrow's (guardian's) request he wrecked the chicken house and moved the fence on Lots 22–23 back an additional 3.5 feet; the city then blacktopped this strip in addition to the 31 feet which had been used as an alley for over fifteen years; defendants are without right to deny plaintiff use of any portion of the full 31 feet of the alley.

An assigned judge heard the evidence at length, viewed the premises and entered written findings of fact and conclusions of law upon which the judgment appealed from was based. In interest of brevity and because of our conclusion, it is unnecessary to summarize all the evidence offered by the parties, or to comment upon either exclusion or admission of proffered testimony.

The trial court made separate findings of fact as summarized hereafter: Findings 1 through 5 dealt with the plaintiff's acquisition, ownership and use of his property as set forth above; Finding No. 6 was that the city had maintained and improved the alley involved for a width of 31 feet for more than 20 years, during which period the general public had used approximately 31 feet of the alley; Finding Nos. 7 and 8 concerned defendants' ownership and that defendants had knowledge of existence of the north-south alley as maintained by the city and used by the general public at the time they acquired title; Finding No. 9 was that defendants began erection of a fence on east side of their property approximately 12 feet from the west side of the alley; Finding No. 10 related to plaintiff's institution of a suit for injunction and the matters which preceded hearing and final determination of the action.

The trial court then entered as conclusions of law the matters hereafter summarized:

(1) By reason of the city maintaining the alley approximately 31 feet in width and keeping it open for more than 20 years, same being used by citizens and the general public, a public alley of 31 feet had been established by prescription; (2) defendants were charged with knowledge of establishment of an alley of this width when they purchased their property; (3) defendants had no right to build the fence they sought to build and plaintiff was entitled to an injunction; (4) because the former owner of the lots (22–23) was an incompetent at all times up to guardian's sale of the property to defendants neither prevented the statute of limitations from running against the incompetent, nor prevented the city from acquiring an easement upon the property; (5) plaintiff was entitled to judgment permanently enjoining defendants from building a fence "approximately 12 feet east of the west side of 31 foot alley and for the costs of this action."

Defendants appeal advances two propositions as grounds for reversal of the judgment. Because a single issue is determinative of the entire controversy it is necessary only to consider questions arising under defendants' proposition I, as follows:

"The use of the Defendants' property has been with the permission of the Defendants and their predecessors in interest and the Court's Finding of Fact 6 and order that an easement or title by prescription has been created is contrary to the weight of the evidence, not supported by the evidence and is contrary to law."

Defendants' position at all times has been that the original entry upon and use of the property was effected with the consent and permission of defendants predecessors in title. Thus, having been a permissive entry and use, no prescriptive title could have been acquired and the trial court's finding and judgment was erroneous. For reasons stated hereafter, we are of the opinion this contention is sound, and the judgment which places the burden of a permanent easement upon defendants' property must be reversed.

The principal ground urged by plaintiff is that defendants' contention is based entirely upon what the guardian (Eva Morrow) said or did relative to the questioned fence and use of the ward's property, although the guardian never owned the property. Much of the argument is that evidence concerning Mrs. Morrow's permission or consent to plaintiff moving the fence is of no probative value. Plaintiff's first reason is that the evidence shows when plaintiff moved the fence back in 1935 (a distance of 31 feet and 8 inches) this was done at her "request." Plaintiff then says that there is a clear distinction between doing an act at a person's "request" and doing the act with that person's permission. Plaintiff asserts that it was an erroneous use of language to say plaintiff rebuilt the fence in 1935 with the guardian's permission, because the phrase "with her

permission" was implanted in plaintiff's mind by incorrect use of the word by defendants' attorney. By this exercise in semantics plaintiff concludes there was no evidence, either direct or by implication, showing plaintiff sought or received permission to rebuild the fence across the back of defendants' property.

In this same connection plaintiff contends there could have been no permissive use of the property. The premise is that Mrs. Morrow had no connection with the property other than as guardian and neither could have given any such "exaggerated permission", nor granted an easement without authority of the county court wherein the guardianship was pending. The fallacy of this argument is apparent. If Mrs. Morrow lacked authority to give third parties permission to come upon the premises to rebuild a fence, it would follow that she lacked authority *to request* the same parties to come upon the premises for this purpose.

To support the correctness of the judgment plaintiff relies upon Liggett v. Peck, 197 Okl. 74, 168 P.2d 622, wherein syllabus 1 states the rule:

"A public highway may be established by prescription in Oklahoma if the land is actually used by the public for that purpose, with the knowledge of the owner, actual or implied, adversely under a claim or color of right and not merely with the owner's permission, and continuously and uninterruptedly for the period required to bar an action for the recovery of the possession of land or otherwise prescribed by statute."

Also cited are Seaman v. Chesnut, 180 Okl. 582, 71 P.2d 965, which was cited in Peck, supra, as authority for the conclusion; and State, etc. v. McCurdy, 171 Okl. 445, 43 P.2d 124, which involved a slightly different factual situation. Because of the rule in Peck, supra, plaintiff argues that the authorities upon which defendants base their argument do not support their contention.

In view of the argument it is necessary to analyze the rule expressed in the authorities cited by plaintiff. Reference to the quoted syllabus reflects five elements which must be established, and be shown to exist for the statutory fifteen years, in order to establish a public highway by prescription. These are: (1) actual use by the public for that purpose; (2) adverse use under claim or color of right; (3) actual or implied knowledge of the owner; (4) not with the owner's permission; (5) continuous and uninterrupted possession.

As a means of measuring the propriety of this judgment we advert to evidence touching upon certain enumerated elements. Relating to actual use by the public, the evidence was uncontradicted that while Mrs. Morrow operated the hotel there was no front entrance. Her guests, or residents, parked at the front curb, while Mrs. Morrow drove around through the alley and used the back entrance. Testimony by a disinterested witness was that the back fence was not moved until 1953 or 1954, and prior to that time the fence was even with the back of the old jail; the alley was approximately 20 feet wide, although the fence did not extend all the distance south to the old jail.

Another disinterested witness (Peters), resident of Hominy for forty five years, had owned Lots 19, 20, 21 before selling them to defendants. When he purchased the lots in 1959, Lots 19 and 20 had clothes lines near the alley, were muddy and full of holes, with trees up to six inches in diameter on the lots. The witness had the lots cleared, hauled and spread about 120 yards of sand and gravel in order to use the area as a parking lot, which could be used by anyone who desired to park there. At that time the alley was rough and poorly kept and the fence line was even with the back of the jail.

The street commissioner had been so employed slightly more than two years at the time he testified as plaintiff's witness. When he became commissioner the

city had no alleys, and he resurfaced the alleys by "guessing", having no stakes to work by; when he blacktopped this alley it was approximately 30 feet wide, but he did not know where the original alley was and blacktopped the traveled portion and told defendant he was sorry to have gotten onto defendants' property, but defendant said this was all right. A 20 foot alley was all that was shown on the map and the city made no claim to any part of defendants' property as an alley; defendant had to use the alley as this was the only means of getting into his property.

An operator of a dry cleaning business who had traveled the alley several times daily since 1936, stated at the time of trial the alley was wider than formerly. When he first came to Hominy this was a dirt alley and was about 20 feet wide before widened; the hard surfaced portion of the alley had not been the width of this alley for all the period since 1936.

Another witness, who had operated her grocery business since 1946, had entered her business through the alley, but had not used the alley of late; she did not remember whether there was a fence but it was a normal sized alley; she had traveled the alley and parked on Lot 19 west of the jail, and Mrs. Morrow did not object to this.

As concerns the question whether the use of the property was hostile and adverse or a permissive use, the testimony of plaintiff himself cogently establishes the permissive character of the original entry and subsequent use. The evidence showed without dispute that Mrs. Morrow's son built the fence in 1932. Plaintiff testified that in 1935 he built the alley fence across lots 23 and 24 at Mrs. Morrow's "request" and had used the area with her permission since that time and she used it to come on her place. In 1954 plaintiff bought Mrs. Morrow's chickens, she being unable to care for them, tore down the chicken house and at her "request" moved the fence back about 3½ feet; this made the fence 34 feet, 8 inches from the corner of plaintiff's building.

Mrs. Morrow always was willing for the public to use her property. Plaintiff denied claiming title to any of defendants' property and stated that his use of the property outside the fence had been with Mrs. Morrow's permission.

■ It is axiomatic that easements by prescription are not favored in law because they necessarily work losses or forfeitures of the rights of others. Irion v. Nelson, 207 Okl. 243, 249 P.2d 107. Hence, to establish an easement by prescription strict requirements must be observed. Irion v. Nelson, supra; 17A Am.Jur., Easements § 66; 27 A.L.R.2d 334. When the strict requirements, necessary to support a finding of a prescriptive easement, are applied to the evidence herein it is clear that judgment which decreed existence of such easement is not supported by the evidence and is contrary to law.

■ The first requisite is that the claim to the property must be adverse and hostile to the title of the true owner. The hostile nature and character of adverse use to establish a prescriptive easement generally is the same as that required to establish a title by adverse possession. 17 Am.Jur., Easements § 76; Telford v. Stettmund, 205 Okl. 86, 235 P.2d 692. And in 3 Am.Jur. (2) Adverse Possession § 36, this rule appears:

"It is elementary that adverse possession cannot be permissive. Conversely, permissive possession is not adverse. However exclusive and however long endured, permissive possession can never ripen into title against anyone, for it is not considered as the possession of a precarious occupier but of him upon whose pleasure its continuance depends. Thus acts done by permission never ripen into title by adverse user. Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained.

"Possession under a license or an agreement granting the right of occu-

pancy is not adverse; the license or agreement precludes the possibility of a claim of adverse possession. * * *"

The text rule had been applied consistently by this Court in Thomas v. Morgan, 113 Okl. 212, 240 P. 735, 43 A.L.R. 934; Nokes v. Padgett, Okl., 262 P.2d 423.

■ A sound statement of the rule appears in Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177:

"* * * And where the original entry or occupation is permissive the statute of limitation will not begin to run until an adverse holding is declared and notice of such change is brought to the knowledge of the owner, and, for this purpose, mere possession is not enough. * * *"

Essentially the same rule was announced in Friend v. Holcombe, 196 Okl. 111, 162 P.2d 1008, in syllabus 2:

"A mere permissive use of a way over the land of another, however long indulged in, will not ripen into an easement."

Plaintiff admitted that he made no claim to title as to any part of defendants' property; that all his use of the property after 1932 occurred after Mrs. Morrow "requested" him to move the fence; and that she was willing for him to make use of the property, and also was willing for the public to use the property. At all times plaintiff recognized that his entry upon, and use of, the land was based upon Mrs. Morrow's acquiescence. Whether the original entry was permissive or requested, in neither event was plaintiff's use based upon any claim of right or hostile holding. And, there was unbiased testimony that Mrs. Morrow never objected to others parking on the property. The evidence clearly established that plaintiff's entry upon and use of the property was permissive.

Thus the only question remaining is whether encroachment upon defendants' land and public use of the widened alley might be considered sufficient to have established the claimed easement. In this connection the evidence was uncontradict-

ed that the City of Hominy made no claim to any of defendants' property. The evidence was conflicting as to when the city actually began improving the alley, after it was widened by plaintiff's moving of the fence. It does appear that subsequent to 1935, after plaintiff first set the alley fence back, there was some use of the alley as a parking area by owners of nearby business houses, and some improvement by graveling and perhaps grading of the area. Other evidence was that such use was permissive both on the part of Mrs. Morrow, and the subsequent owner (Peters), who improved some of the lots in order to provide parking in the area. It is clear that the city did not take positive steps immediately upon the fence being moved, and it fairly appears that the city's activity was carried out as an accommodation, and not by way of fixing an easement over the property.

Although a public way may be created by a prescriptive easement, the general text rule is stated in 25 Am.Jur., Highways § 16:

"Many courts hold that the fact that a highway as used deviates through mistake from the line as established by the public authorities will not operate to create by prescription or limitation a right of way over the tract actually used for travel regardless of how long such use may be continued, because such use cannot be deemed adverse to the owner of the land since it results from a misapprehension and, furthermore, because the animus dedicandi on his part is wanting, since he does not intend to assent to the use of the land actually occupied by the public, but his assent is limited to the use of the way as actually established. * * *"

Also see 39 C.J.S. Highways § 9, and footnote citations.

■ We consider this rule of proper application herein. The City of Hominy made no claim to an alley of greater width than the 20 feet platted originally. The strip of defendants' property, now claimed to be the subject of a prescriptive easement, first

was opened by plaintiff for his own purposes, rather than by the city for use of the general public. So far as shown, the public's inadvertent use of the widened portion of the alley did not come about upon the basis of any claim of right, but simply resulted from plaintiff's action in widening the alley by moving the fence, and because Mrs. Morrow did not object to this use.

The city's only claim necessarily would be based upon improvements made after the original entry. There is no evidence the city possessed the widened part of the alley and used it as a right of way, or otherwise, or asserted any title thereto. Admittedly a city can acquire a right of way by prescription. However, this principle cannot control here because of the complete failure to show this land is now, or ever has been "held" by the city as that term is understood and applied. State, etc. v. McCurdy, supra; Liggett v. Peck, supra.

For the city to hold property and acquire an easement thereon it must have taken possession under some semblance of title, claim of possession or right to use of the property. It is not enough to establish holding and use by the city simply to show that, after removal of the fence by a third person, the city made some improvement which served principally as a particular accommodation to the third party. This inadvertent use of the widened portion of the alley was by no means an adverse or hostile occupancy, and so could not provide any basis for establishment of a way by prescription.

██ No question of dedication arises herein. Dedication of a public highway can be accomplished only by manifestation of an intent to dedicate to the public. There was no intention exhibited here to give a part of the lots involved to the city.

█ The fact that the city extended its services in doing some work thereon as an accommodation, or by reason of mistake as to the true alley line as testified to by the street commissioner, did not serve to establish the easement. The alley was platted on a certain line. For his own purposes plaintiff opened the lots involved, and the public thereafter made some use of the property by reason of mistaken understanding as to the true alley line. In this circumstance the law will not presume the creation of an easement by prescription based simply upon mistake as to the true line.

Plaintiff was the principal user of this alley as a way of convenience. The public's use of the alley best can be characterized as casual and intermittent, with some portions of the widened portion being devoted to parking by permission of the owners. Plaintiff's claim of use and right to use, of the portion of the alley extending onto defendants' property, was begun by agreement and under Mrs. Morrow's permission. It does not appear that any claim of right ever was made against the holder or owners of the property until defendants' attempted to fence their property. Plaintiff's claim of right could not exist only in his own mind, nor could the city assert such a claim unless done in such manner that knowledge thereof was brought home to the owner. The fact that the guardian, and the successors to the incompetent's title, knew of the alley had been evidenced by plaintiff and that it was traveled and subjected to occasional use by other citizens, does not raise a presumption that such use was hostile or under a claim of right. Because Mrs. Morrow allowed plaintiff to move the fence and make use of approximately 12 feet across the back of the lots, and that others thereafter used the widened area for travel and parking without objection, does not establish an intention to give an easement to the public.

The evidence established that the original entry upon the property over which a prescriptive easement now is claimed was made by agreement and permission. The use was allowed to continue by silent acquiescence until defendant took steps to fence his property. The possession asserted by plaintiff, and now claimed to have been made by the public, was neither adverse nor hos-

tile and cannot be construed legally as sufficient upon which to base a prescriptive title.

█ This is an appeal from a judgment rendered in an equity case, wherein this Court is required to examine the entire record and weigh the evidence. And, where the judgment of the trial court is clearly against the weight of the evidence or contrary to the law applicable this Court will reverse the judgment and render or cause to be rendered that judgment which should have been rendered in the trial court. Roberts v. Humphreys, Okl., 356 P.2d 370; Taylor v. Taylor, Okl., 387 P.2d 648.

The judgment of the trial court accordingly is reversed and the cause is remanded to the district court, with directions to set aside the judgment rendered and enter judgment for defendants.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, HODGES and LAVENDER, JJ., concur.