Cecil M. BUFFALO, Sr. *v.* ARKANSAS
STATE HIGHWAY COMM'N et al

5-5206                                    451 S. W. 2d 737

Opinion delivered March 30, 1970

*Stubblefield & Matthews,* for appellant.

*Thomas G. Keys, Billy Pease* and *Hubert E. Graves,* for appellees.

J. FRED JONES, Justice. This is an appeal by Cecil M. Buffalo, Sr. from a decree and order of the Pulaski County Chancery Court requiring him to remove an advertising sign he erected on the right-of-way of state Highway 338, and dismissing his cross-complaint against third parties seeking the removal of an additional encroachment by the third party cross-defendants. Buffalo has designated the points he relies on for reversal as follows:

"The sign of the appellant is authorized, reasonable and necessary for the conduct of appellant's business.

The state highway department's assumption of Baseline Road into the state highway system as state Highway No. 338 neither revoked the original

authorization for the encroachment nor changed its reasonable or necessary character.

The encroachment of the appellant is temporary and if made in violation of Section 5 of Act 419 of 1953 (Ark. Stats. Sec. 76-544) should be ordered removed only after adjoining encroachments are removed."

We rather agree with the appellees in their response to the appellant's points, stated in appellees' brief as follows:

"There is no such thing as an authorized, reasonable and necessary encorachment.

Inclusion of Baseline Road into the state highway system as Highway No. 338 neither continued to authorize or revoke any authority for encroachments upon the highway, and no such encroachment could be reasonable and necessary in character.

There is no such thing as a temporary encroachment in violation of Ark. Stats. Ann. Section 76-544; removal of an encroachment is not dependent upon the removal of other encroachments."

The facts in this case are distorted to some extent by implications growing from what the appellant's attorney characterizes as "a spite law suit," between the appellant and the third party cross-defendant appellees. From the overall record, however, it appears that Mr. Buffalo purchased the west half of a tract of land, designated "tract 11," with a filling station thereon. This property fronts 105 feet on the south side of Base Line Road, and also borders the east side of Reck Road where Reck Road intersects, but does not cross, Base Line Road. Mr. and Mrs. Day own the east one-half of tract 11, immediately east of Buffalo's corner lot, and the north end of the Day property also fronts 105 feet on the south side of Base Line Road. The

west boundary line of the Day property coincides with the east boundary line of Buffalo's property. Base Line and Reck Roads both have 60 foot rights-of-way, and Base Line Road has now been taken over by the state and adopted into the state highway system as state Highway 338.

While Highway 338 was still a county road, and the traffic flow was less than it is now, many encroachments on the 60 foot right-of-way by abutting landowners were permitted by acquiescence as well as affirmative permission and approval by county road officials. A part of the drive or turn-in approach to Mr. Buffalo's filling station was on right-of-way when Buffalo purchased the property, and the county road superintendent authorized Mr. Buffalo to erect a 4x8 foot sign about 12 feet out into the right-of-way, with the bottom of the sign being two or three feet above the ground. Mr. and Mrs. Day also had a solid board fence built along their west boundary line. This fence is about six feet high and also extends into the right-of-way about eight feet.

After the state took over the maintenance of Highway 338, it seems that additional asphalt was added to the traveled surface of the highway causing it to be considerably higher than the gravel area between Buffalo's gas pumps and the pavement. Buffalo used his own tractor periodically in filling up holes in the graveled area and in keeping the gravel moved up even with the surface of the blacktop, so that automobiles could easily leave the highway surface without drop-off in entering his service station for gasoline and other services.

The record indicates that Buffalo and Mr. and Mrs. Day had engaged in previous litigation in connection with a surface drainage problem, and that the Days objected to Buffalo's operation of his tractor on the right-of-way. Mr. and Mrs. Day also objected to the obstruction of vision created by Buffalo's metal sign. Mr. and Mrs. Day received full credit for reporting Buffalo's en-

croachments to the state highway department, resulting in the Highway Commission filing the petition for injunction in the Pulaski County Chancery Court from which comes this appeal.

Buffalo filed a cross-complaint against the Days on June 12, 1969, alleging that they are also encroaching on the right-of-way with their fence, and that if Buffalo is required to remove his sign, then the Days should be required to remove their fence. On June 27, 1969, the Days filed a demurrer, as follows:

"The cross-defendants, R. F. Day and Agnes N. Day, to the cross-complaint of Cecil M. Buffalo, Sr., demur."

On July 17, 1969, Buffalo filed an amendment to his cross-complaint and alleged that if he was forced to remove his sign, then Days' fence would obscure his filling station from the view of motorists and prospective customers traveling west on the highway. Buffalo prayed that the Commission's petition be dismissed and that Days' rights to maintain their fence as an encroachment into the right-of-way be determined by the court. On October 7, 1969, the chancellor sustained the demurrer and dismissed the cross-complaint by order, as follows:

"On this day came on for hearing the demurrer of the cross defendants, R. F. Day and Agnes N. Day, his wife, to the cross-complaint and first amendment to the cross-complaint of the defendant, Buffalo, and premises considered the Court finds that the demurrer should be sustained and the said Buffalo refusing to plead further, it is ordered by the Court that both the cross-complaint and first amendment to cross-complaint against R. F. Day and Agnes N. Day, his wife, be and the same is hereby dismissed with prejudice."

Ark. Stat. Ann. § 76-544 (Repl. 1957) provides as follows:

"The rights-of-way provided for all State Highways shall be held inviolate for State Highway purposes, except as hereinafter provided, and no physical or functional encroachments, installations, signs (other than traffic signs or signals), posters, billboards, roadside stands, gasoline pumps, or other structures or uses shall be permitted within the right-of-way limits of State Highways except that political subdivisions, rural electric cooperatives, rural telephone cooperatives, and public utilities of the State may use any right-of-way or land, property or interest therein, the property of the State Highway Commission, for the purpose of laying or erecting pipe lines, sewers, wires, poles, ditches, railways, or any other purpose, under existing agreements or permits or such agreements or permits hereinafter made by the State Highway Commission or under existing laws, provided such use does not interfere with the public use of such property for highway purpose."

For all practical purposes, under the facts of this case, we agree with the appellees' statement that "there is no such thing as an authorized, reasonable and necessary encroachment." In the light of § 76-544, supra, what is reasonable and necessary for the conduct of appellant's business, must give way to the public welfare under the police powers of the state as expressly set out by statute.

After the petition was filed by the Commission and before hearing thereon, Buffalo removed the 4 x 8 foot sign and erected another one about 4 x 4 feet in size and elevated to a height of about 14 feet on two 2 inch steel pipes. Mr. Bill Jeter, maintenance superintendent for the highway department, testified that Mr. Buffalo is actually maintaining several separate encroachments on the highway right-of-way. Mr. Jeter says that there are many other encroachments into the right-of-way by other abutting property owners, and that they all will be requested to remove the encroachments as fast as the highway department can get around to having this done

As to the demands made on Mr. Buffalo for the immediate removal of his sign, Mr. Jeter testified as follows:

"Q. Is there any particular reason that the Highway Commission is asking that this particular encroachment be removed at this time and at the same time not asking that Mr. Buffalo remove other encroachments or his neighbors encroachments be removed?

A. The reason why that we asked the sign to be removed is that the people using Reck Road say that it obscures their view coming out over the right-of-way.

Q. Does this, in your opinion, create a hazard for traveling motorists?

A. It does."

We conclude, and so hold, that Mr. Buffalo acquired no prescriptive or other right to the private use of the right-of-way in front of his filling station merely because Mr. White, the county road superintendent, had authorized him to erect a sign on the right-of-way when the highway was a county road. Neither has Mr. Buffalo acquired any private right to build or maintain encroachments on the state highway right-of-way by virtue of his neighbors also maintaining encroachments thereon. From the record before us the state simply owns the 60 foot right-of-way in this case and certainly in the light of the evidence of a hazard to the traveling public, the state has a right to the removal of encroachments erected by Mr. Buffalo. *Ark. State Highway Comm'n* v. *Staples,* 239 Ark. 290, 389 S. W. 2d 432; Ark. Stat. Ann. § 76-544, *supra.*

Buffalo argues that the dismissal of his amended cross-complaint against Mr. and Mrs. Day *with prejudice* forecloses all possibility of future redress for such wrongs and damage he may sustain by reason of fences erected and maintained by Mr. and Mrs. Day. We do

not so interpret the chancellor's order of dismissal. The chancellor held, and we agree, that Buffalo has no standing to maintain his cross-complaint against Mr. and Mrs. Day *in this action* brought by the state highway department against Buffalo for the removal of an encroachment built and maintained by Buffalo on the highway right-of-way. Consequently, this decision does not effect Buffalo's rights to pursue whatever course of action he may have against the Days in a separate action.

In the Oklahoma case of *State* v. *Friar*, 25 P. 2d 620, the state sought to enjoin the encroachment by a filling station upon state Highway 66 right-of-way in the incorporated town of Afton. The defendant contended that the town of Afton had jurisdiction over the 70 foot right-of-way through the town, and that there were 10 filling stations already built which protruded from 10 to 15 feet into the right-of-way. The trial court denied the application for injunction and in reversing the decision of the trial court, the Supreme Court of Oklahoma, among other things, said:

> "It is elementary that in some cases the rights of an individual citizen or a small group of citizens must give way when the welfare of a great number is affected.

> The fact that other filling stations are located within the city limits which also incidentally encroach on the public highway constitutes no defense to this action for the reason that:

> 'Laches and estoppel do not operate against the state, and no procrastination of public officials prejudices the state, and their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide.

> 'The state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns.' State ex rel.

*Veale* v. *Paul,* 113 Kan. 412, 214 P. 425."

In the Alabama case of *Jordan* v. *McLeod,* 127 So. 160, two abutting property owners attempted to enjoin the other from encroaching on a public alley right-of-way forming part of a highway through the city of Troy. In applying the "clean hands doctrine" the Alabama Supreme Court said:

> "As we understand this evidence, neither party comes to court with his right in the controversy unaffected by his own wrong and encroachments in question, and throughout, the length and breadth of said highway...
>
> The reasonable inferences from the evidence were that both parties were encroaching upon that public highway. The decree was not erroneous, and we will not disturb that result. This will not prevent the city of Troy from acting in the premises against any and all who unlawfully encroach upon that public highway, free of estoppels, laches, statute of limitations, or prescription."

See also *Loud* v. *Pendergast,* 92 N. E. 40, where, in connection with an effort to restrain an alleged violation of a building restriction, the court said:

> "Where a plaintiff has violated the very restriction he seeks to enforce to substantially the same extent and in the same general way as has the defendant, and there is no material difference in kind or degree between them, a court of equity will not ordinarily interfere."

To the same effect is the early Iowa case of *Brutsche* v. *Bowers,* 97 N. W. 1076.

The decree is affirmed.